[Civ. No. 22041. Second Dist., Div. One. June 26, 1957.]

JAMES D. MOORE et al., Appellants, v. OJAI IMPROVE-
MENT COMPANY (a Corporation), Respondent.

Johnston & Lucking and William A. Lucking, Jr., for
Appellants.

Waite & Drapeau and David R. Drapeau for Respondent.

WHITE, P. J.—This is an action for declaratory relief
and other remedies, the purpose of which is to enforce against
plaintiffs' grantor, defendant Ojai Improvement Company,
restrictive covenants in the event of disposition by defendant
of other lands retained by it, and which plaintiff contends
are subject to the same restrictions imposed upon the latter's
land, and in the alternative, reformation of the deed by which
plaintiffs acquired title, to reflect the alleged agreement of
the parties.

Trial before the court resulted in a judgment for defend-
ant. Motion for a new trial was denied. From such judg-
ment and order plaintiffs prosecute this appeal. Since in a

case of this character an order denying motion for a new trial is non-appealable, the attempted appeal therefrom must be dismissed, but the action of the court in denying such motion may be properly considered on appeal from the judgment (Code Civ. Proc., § 956; *Wilcox* v. *Hardisty*, 177 Cal. 752, 754 [171 P. 947]; *City of Los Angeles* v. *Glassell*, 203 Cal. 44, 46 [262 P. 1084]).

Concerning the factual background surrounding this litigation, the record reflects that in 1949 and for some years prior thereto defendant Ojai Improvement Company owned a subdivided tract of land known as Foothills Park, containing some 87 acres, lying mostly within the city limits of the city of Ojai, Ventura County, California.

In the spring of 1949, negotiations were opened by defendant corporation to sell approximately 27 acres of this land to the plaintiffs Moore and approximately 2.6 acres to one Holroyd.

The negotiations for the sale of this land were carried on between plaintiffs Moore and said Holroyd on the one hand, and Robert M. Sheridan as President and attorney for defendant corporation, and William J. Burke as Secretary and agent of defendant corporation, on the other hand.

There is in the record unchallenged evidence that in May, 1949, before the transaction was placed in escrow, plaintiffs Moore and said Holroyd, together with defendant's corporate officers Sheridan and Burke, conferred in Mr. Sheridan's office. That it was then and there agreed between the prospective purchasers and the corporation (through its officers and attorney) that the restrictive covenants to be placed in the deed to the Moores (not more than one house per acre, and at least 1,500 square feet per house) would apply equally to the lands to be sold to the Moores and Holroyd, and to all of the lands in Blocks "A" and "B" retained by defendant corporation, and that such restrictions would be mutually onerous and mutually beneficial.

On or about May 24, 1949, defendant Ojai Improvement Company caused its President and attorney, Robert M. Sheridan, to prepare escrow instructions and the deed for the purchase and sale of this 30 acres, more or less.

The escrow instructions provided in part, that title to the lands purchased by plaintiffs was to be vested in them, ". . . subject only to . . . (3) the agreed restrictions, conditions and covenants to run with said property and to be applicable in

the event it or any part thereof is subdivided *so as to provide a uniform plan for the improvement of said property and that retained by the seller* in Blocks A and B of said Foothills Park, as set out in said deed, by reference made a part of this escrow." (Emphasis added.)

It was also provided in the escrow instructions that the lands to be purchased by plaintiffs were to be those ". . . described in deed of Ojai Improvement Company to us (plaintiffs) which is handed you herewith by the seller."

The deed in question contained the following language: "This conveyance is made upon the condition that use of the above described property shall, until June 1, 1979, be subject to the following restrictions, which are expressly declared to be conditions subsequent to the breach of which or any of which after notice thereof shall have been recorded in the office of the County Recorder of Ventura County, and sixty (60) days shall have elapsed after such recordation, the breach continuing, the title to the property upon which such breach exists shall revert to and be vested in the grantor, its successors or assigns, to whom a right of reentry is expressly reserved, provided, however, that no reversion of title shall affect the validity of the lien of any mortgage, trust deed or other encumbrance upon the property.

*"Said restrictions, imposed to provide a uniform plan for the improvement of the property hereby conveyed if it be subdivided and sold and of other property in Blocks 'A' and 'B' of said Foothills Park still retained by grantor, are as follows:*

"In the event the property hereby conveyed is subdivided and sold each of the lots in such subdivision shall encompass an area of not less than one acre, each shall be used for residence purposes exclusively and not more than one single-family dwelling with customary outbuildings, shall be erected or maintained thereon, and such dwelling shall have a floor area of not less than Fifteen Hundred (1500) square feet.

"The foregoing restrictions shall be covenants running with the land and shall operate for the benefit of and may be enforced by the grantor, its successors or assigns *or by the owner of any lot into which said property may be subdivided."* (Emphasis added.)

Upon the close of escrow and consummation of the sale, said deed, dated June 14, 1949, was delivered to plaintiffs. After carefully reading and examining the deed, plaintiff James D. Moore, accompanied by his wife, deposited the docu-

ment in their safe deposit box at a bank and did not thereafter examine the same until early in 1955.

Between 1949 and early 1955 plaintiffs built a home on said 27 acres at a cost of approximately $70,000, and constructed roads, fences and other improvements thereon.

Early in 1955, defendant corporation, Ojai Improvement Company, entered into negotiations for the sale of the remaining land owned by it in Blocks "A" and "B" of said Foothills Park, to Messrs. Hartfield and Clark. Defendant corporation and said Hartfield and Clark signed escrow instructions dated January 14, 1955, which provided among other things that a conveyance to Hartfield and Clark would be on the express condition that said property "cannot be cut into more than three parcels per acre." Messrs. Hartfield and Clark thereafter caused to be prepared and submitted to the City Council, City of Ojai, subdivision maps showing their open and admitted intention to subdivide said real property into lots of substantially less than one acre each, one of said maps showing an intended development of 157 homes on the 60 acres more or less remaining in Blocks "A" and "B" of Foothills Park.

By letter dated February 15, 1955, plaintiffs' attorneys notified defendant corporation that defendant corporation would be held to the restrictions in the deed.

On May 27, 1955, plaintiffs filed their complaint herein seeking injunctive relief restraining defendant from conveying the foregoing land retained by them as aforesaid, without imposing upon such conveyances the restrictive provisions contained in the above mentioned deed from the defendant to plaintiffs. That in the event the court determined that said restrictive provisions contained in plaintiffs' deed are not in accord with their construction thereof, that said deed be reformed and modified so as "to accurately express the intent and agreement of the parties hereto"; and finally, that the court "declare and adjudicate the relative rights, duties and obligations of the parties hereto in order that a complete determination of the question may be had."

Defendant by its answer denied the pertinent allegations of the complaint and set up unclean hands, jurisdiction, statute of limitations, laches, and changed conditions as additional defenses. Also, Ojai Improvement Company counterclaimed on the conditions subsequent in the deed in question.

We have concluded that the determination of this case rests upon the correctness of the finding of the trial court, "That

it is true that certain conditions, covenants and restrictions appear in said deed. . . . *That it is true that these conditions, covenants and restrictions apply to and govern the disposition of the land conveyed by the said deed and now owned in whole or in part by the plaintiffs in this action. . . . That it is, however, untrue that such conditions, covenants and restrictions . . . apply to any or all the lands retained by the defendant Ojai Improvement Co. . . .* for the reason that the said deeds are the sole and only memorial of the conveyance transaction between the plaintiffs and the defendant Ojai Improvement Co. . . . and said deeds do not describe the lands to be benefitted by the same with the particularity required by the law as to defendant Ojai Improvement Co." (Emphasis added.)

The learned trial judge filed a "memorandum of opinion," and from an examination thereof, which we are permitted to make as an aid in interpreting the findings and conclusion (*People* v. *Paramount Citrus Assoc., Inc.,* 147 Cal.App.2d 399, 408-409 [305 P.2d 135]), it is manifest that the court below determined, (1) the deed to plaintiffs is the "sole and only memorial" of the transaction, and (2) the deed to plaintiffs does not contain an adequate or sufficient description of defendant's land.

Respondent concedes that if our conclusion is founded on the premise that the trial court's decision was based solely on the terms of the written instrument, we are not bound by the construction of that document arrived at by the court below. We shall, therefore, proceed upon the theory announced in the case of *Werner* v. *Graham,* 181 Cal. 174, 185 [183 P. 945], as follows: "that if the parties desire to create mutual rights in real property of the character of those claimed here, they must say so and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding."

We shall therefore omit any consideration of what the understanding was, as disclosed by the escrow instructions and the parol evidence above narrated, and confine ourselves to a construction of the deed in the light of the fact that the defendant was the owner of a large tract of land containing some 87 acres, and sold to plaintiffs approximately 27 acres, and whether from the language of the deed here in question, in the light of the surrounding circumstances, and from that deed alone, as so construed, there appears therein the intent

of the parties to create mutual or reciprocal rights of restriction between them, and not, as found by the trial court, restrictions binding only upon the plaintiffs as grantees. In the case now engaging our attention, the deed provided that the restrictions were *"imposed to provide a uniform plan for the improvement* of the property hereby conveyed if it be subdivided and sold, *and of other property in Blocks 'A' and 'B' of said Foothills Park still retained by grantor."* (Emphasis added.) The deed further provides that the restrictions in question "shall be covenants running with the land and shall operate for the benefit of and may be enforced by the grantor, its successors or assigns *or by the owner of any lot into which said property may be subdivided."* (Emphasis added.)

Respondent leans heavily on the case of *Werner v. Graham, supra,* but in the cited case, the court was confronted, as stated in the opinion (p. 181) with a situation where ". . . the owner of a tract of land, sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of what is an essential element of any such servitude . . ." And again, (p. 184) in referring to the facts of the case before the court, it is said, " . . . there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan. . . ." No such situation prevails in the instant case. A mere reading of the restrictive clauses in the deed leads inevitably to the conclusion that the parties herein, intended to express the mutual intent to create the equitable servitude relied upon, and that the land in Blocks "A" and "B" retained by defendant was intended by all parties to the deed in question to be bound by the same uniform set of restrictions imposed upon the land conveyed to plaintiffs.

The deed itself says: "Said restrictions, imposed to provide a uniform plan for the improvement of the property hereby conveyed if it be subdivided and sold and of other property in Blocks A and B of said Foothills Park still retained by

grantor, . . ■ ■ To us, these words mean what they say; that a uniform plan for the improvement of the property was intended; not only that conveyed to plaintiffs, but, as stated in the deed, ". . . of other property in Blocks A and B of said Foothills Park still retained by grantor." Respondent's query as to "What other property? All of it?" is answered by the fact that the deed itself specifically incorporates the subdivision map of Foothills Park, duly recorded delineating Blocks "A," "B" and "C." By specifically referring to Blocks "A" and "B," the deed identifies these blocks as part of said Foothills Park. The deed also provides that the restrictions "shall be covenants running with the land" and may be enforced not only by defendant grantor, but by the "owner of any lot into which said property may be subdivided." We therefore say that the instant case is easily distinguishable from *Werner* v. *Graham, supra,* relied upon by respondent, and under the language used in the deed now before us, the case just cited may well be considered as authority for the conclusion at which we have arrived. Our position is also fortified by the case of *Gamble* v. *Fierman,* 82 Cal.App. 180 [255 P. 269], and cases therein cited.

We are satisfied that in the case at bar it was the intent of the parties to create mutual rights in real property of the character of those claimed by plaintiffs herein — that the parties so stated in the written instrument which constituted the final expression of their understanding.

The foregoing conclusion at which we have arrived as to the construction of the language used in the deed between the parties hereto renders it unnecessary to consider other issues presented on this appeal.

The attempted appeal from the order denying a new trial is dismissed. For the reasons herein stated, the judgment is reversed and the cause remanded with directions to the court below to enter judgment that the aforesaid lands retained by defendant are held subject to the same conditions, covenants and restrictions as those contained in plaintiffs' deed herein.

Doran, J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 20, 1957.