[Civ. No. 906. Fifth Dist. Sept. 16, 1968.]

GEORGE DOO et al., Plaintiffs and Appellants, v. PAUL E. PACKWOOD et al., Defendants and Respondents.

McFall, Burnett & Martin and John M. Burnett for Plaintiffs and Appellants.

William C. Cullens for Defendants and Respondents.

CONLEY, P. J.—The Doo family, husbands and wives (George and Ying, Jack and Fun, Kenneth and Ruby, Quong and Jennie), were partners in the retail grocery business in Turlock; at times they ran three major markets and during other periods two; one of their stores was located on Landers Avenue. The plaintiffs were building a larger and more modern market on the same street, and, therefore, projected the sale of the lot with the building on it in which they had previously conducted one of their grocery ventures. However, they desired to make sure that the building would not be used to compete with them.

In June of 1964, the appellants listed the property for sale but not the business which had been conducted in it. The listing carefully provided that the property was not to be used for the retail grocery business. Shortly thereafter, through a real estate broker, the Doos entered into negotiations with the Packwoods for the sale of the property, and escrow instructions were signed by both the Doos and the Packwoods, which plainly stated that the property was not to be used for conducting a retail grocery business. Finally, a deed was executed by the Doos and the sale to the Packwoods was consummated; the deed contained the following language:

''The above described property, or any part thereof, or any buildings erected thereon, including the present structure, shall not, at any time, be used for the retail sale of groceries.''

The Packwoods soon thereafter leased the property to respondent, Jim Stockwell, who began to operate and has since conducted a retail grocery business on the property. The Doos made a demand upon Stockwell and the Packwoods that such

use cease. The Packwoods let it be known that they did not consider themselves bound by the restriction, and this action followed.

The plaintiffs asked for a declaration as to the rights of the respective parties and prayed for an injunction to prevent the continuing retail sale of groceries and for $30,000 in damages. The defendants filed a demurrer to the complaint; it was overruled by the court, which at that time said in writing:

"The court is satisfied that there is no question but what the law permits certain restrictive covenants such as that contained in the transaction between plaintiffs and the defendants, although the length of time said covenants may be kept in force may be limited, and also the area to be covered by said covenants may in certain circumstances be limited. These matters, however, the court feels are of evidentiary nature and must be determined when this matter is heard upon its merits."

The defendants Packwood and Stockwell each filed an answer to the complaint denying liability. The Packwoods also filed a cross-complaint naming as cross-defendants Escrow & Title Service of Turlock and F. F. Bergstrom and Filomena Stammerjohan, its agents, servants and employees, who had acted for the parties in connection with the escrow involving the Doos' sale of the land involved. The cross-complaint prayed for $30,000 on a first cause of action and $35,000 on each of the second and third causes of action, claiming damages by reason of allegedly permitting the removal of the deed from the papers left with it in escrow and the change of its content by or on behalf of the Doos. The defendants Packwood also filed a counterclaim and first affirmative defense against the Doos, saying that they had, unknown to them, procured the addition of the restrictive covenant to the deed. The pleadings were completed through a denial by all of the cross-defendants of any wrongful change of the wording of the deed.

The trial resulted in findings and a judgment to the effect that the Doos recover nothing, that the cross-complainants recover nothing from the title people, that by virtue of a writing contained in the escrow papers the Packwoods should pay $750 in attorneys' fees to the Escrow & Title Service of Turlock, and that the escrow people recover their costs of suit from the Packwoods.

The only appeal filed was one by the plaintiffs; they limited their appeal to that portion of the judgment which was

favorable to the Packwoods and Jim Stockwell and against the plaintiffs. Everything else in the judgment is now final through the lapse of time. The principal question to be determined is whether the restrictive covenant was proper and effective.

A summarization of the law on this subject is thus stated in 20 American Jurisprudence, Second Edition, Covenants, Conditions, etc., section 182, pages 746, 747, as follows: ''While the courts have manifested some disfavor of covenants restricting the use of property, they have generally sustained them where reasonable, not contrary to public policy or to law, and not in restraint of trade or for the purpose of creating a monopoly. Restrictions per se are not violative of the public good, inimical to public policy, or subversive of the public interests, and it has been said that building restrictions have never been regarded as impolitic. However, a restriction imposed on property conveyed may be invalid if it contravenes some constitutional or statutory provision, or where it is of no benefit to anyone and its enforcement might seriously interfere with the proper development of the community, and restrictions which amount to a prohibition of use of the property are void. Subject to these limitations, the court will enforce restrictions to the same extent that it would lend judicial sanction to any other valid contractual relationship. So long as the beneficial enjoyment of the estate is not materially impaired and the public good and interests are not violated, such restrictions are valid.''

In 14 California Jurisprudence, Second Edition, Covenants, etc., section 82, page 92, it is said: ''A restriction may prohibit the grantee's use of the property for certain business purposes, provided the restriction is not imposed for the purpose of securing a monopoly for the grantor.'' It has been held that when a person sells his property (real or personal) he can place such restrictions on its use as he sees fit, subject to regulations against monopoly or other illegal purposes. (*Burdell* v. *Grandi*, 152 Cal. 376 [92 P. 1022, 125 Am.St.Rep. 61, 14 L.R.A. N.S. 909]; 7 Thompson on Real Property, 1962 Replacement, § 3161, p. 112 et seq.; Sackman on The Law of Titles, (1st ed.) Covenants, § 3.73, p. 559 et seq.; *Townsend* v. *Allen*, 114 Cal.App.2d 291, 294 [250 P.2d 292]; *Wedum-Aldahl Co.* v. *Miller*, 18 Cal.App.2d 745, 750 [64 P.2d 762]; *Los Angeles Land & Water Co.* v. *Kane*, 96 Cal.App. 418, 420 [274 P. 380].)

■ It is apparent from the evidence in the case that the Doos intended to protect themselves through the restrictive covenant against competition in the retail grocery business in the neighborhood of the lot which they sold. This desire was legitimate and was protected by the restrictive covenant set forth in the deed. It is not of such a character as to constitute an attempt to set up a monopoly such as is contemplated in the case of *Burdell* v. *Grandi, supra,* 152 Cal. 376, or to restrain the grantee from pursuing an entire "business, trade or profession." (See: *Grogan* v. *Chaffee,* 156 Cal. 611, 613 [105 P. 745, 27 L.R.A. N.S. 395]; *Boughton* v. *Socony Mobil Oil Co.,* 231 Cal.App.2d 188, 191-192 [41 Cal.Rptr. 714]. Not only is the restrictive covenant in this case not forbidden through the rule against setting up a monopoly, but there is nothing else in the situation which prevents the provision in the form of the restrictive covenant. ■ Although the Packwoods attempted to prove that the restrictive covenant was improperly brought into the picture, the evidence found to be true by the court completely wiped out any thought of impropriety in the way in which the covenant was set forth in the deed and completely established the fact that the grantees had full knowledge that the covenant was to be contained in the deed.

■ The next question to be resolved is: what can be awarded to the plaintiffs in the way of an injunction or damages. The answer is clear that plaintiffs would be entitled to an injunction preventing the Packwoods and their lessee and anyone succeeding the Packwoods as a grantee with notice of the restriction in the title from carrying on a retail grocery business on the premises together with such damages arising out of the operation of such retail grocery business in the lot conveyed to the Packwoods as may be proved. It might be suggested that if an injunction is issued and presumably obeyed there would be no room for the award of damages; such a suggestion is oblivious of the fact that, even if such a restraining order should presently stop competition in the retail grocery business, a number of months have already passed and may pass hereafter in which an injunction has not been effective; this gives occasion for the award of damages in addition to the injunction.

The relationship of the parties is perfectly clear from the evidence in the case. The Doos, owning several markets in the vicinity, desired to sell a lot and building which had formerly been used by them as a market but did not wish to embarrass its continuing sale of groceries on a retail scale in that vicini-

'ty and inserted a covenant in the deed to the lot that the lot 'would not be used for the retail sale of groceries; this was perfectly understandable and was a device frequently and legitimately resorted to in similar circumstances; it was not on a scale large enough in scope to amount to the attempt to secure the exclusive right to sell groceries in the neighborhood, and it was not phrased in a way that was contrary to law or to the public interest. The sellers contended that the amount charged for the lot was much less than it would have been if the lot had been subject to use as a store for the retail sale of groceries. This deed was recorded, and, as a consequence, it gave and continues to give notice to any possible future purchaser of the restriction which regulates the use of the land.

In finding that the restriction was not effective, the trial judge gave great weight to his belief that the restriction would persist for all time, saying:

"It is obvious in this case that if the court is to construe the restrictive covenant and/or condition in its literal sense, the land conveyed can never for all time be used for the retail sale of groceries. The court is of the opinion that the law of this state will not permit the enforcement of such a restriction."

The court's viewpoint as to the necessary persistence of this restriction is erroneous. Its purpose quite clearly was to permit the Doo family to eliminate specific competition against their own markets in the vicinity. The restrictive covenant actually adopted was neither invalid as unreasonable, unlawful or against public policy. In the event of a later suit, the restrictive covenant would not be allowed to persist any longer than the factual situation remains as it was when the deed containing the restrictive provision was delivered and accepted. In other words, if all of the Doo partners should not continue in the grocery business together or separately in practically the same location as they are now in, the restrictive covenant could be subject to an action to disregard it under principles of equity (Sackman on The Law of Titles, (1st ed.) *supra,* Covenants, § 3.73, p. 564; *Wedum-Aldahl Co.* v. *Miller, supra,* 18 Cal.App.2d 745, 751) or the restrictive covenant could be cancelled through release by the grantors (Sackman on The Law of Titles, (1st ed.), *supra,* Covenants, § 3.73, p. 566) or there could be such a change in the character of the neighborhood as would render it inequitable and oppressive to enforce the restriction (Sackman on The Law of

Titles, (1st ed.), *supra,* Covenants, § 3.73, pp. 566-567; 54 A.L.R. 812; *Marra* v. *Aetna Constr. Co.,* 15 Cal.2d 375, 378 [101 P.2d 490]).

Damages also may be awarded to the plaintiffs arising out of any breach of the covenant. In proof relative to damages it must be shown that the damage proximately flowed from the wrongful act of defendants. It is not enough to prove merely that a reduction of business in the store of the plaintiffs followed the opening of the defendants' store for the retail sale of groceries. The misleading conclusion which would follow from the mere principle ''post hoc, propter hoc'' would not be sufficient in itself to justify an award of damages. The connection between the injury and the damage would have to be shown. However, it should be kept in mind that even though it may be difficult to prove explicit damages in a given lawsuit that fact is never sufficient to deny damages completely. (*Shoemaker* v. *Acker,* 116 Cal. 239, 245 [48 P. 62]; *Flagg* v. *Andrew Williams Stores, Inc.,* 127 Cal.App.2d 165, 174 [273 P.2d 294]; *Hildebrand* v. *Stonecrest Corp.,* 174 Cal.App.2d 158, 167 [344 P.2d 378].)

 The case of *Oliver* v. *Hewitt,* 191 Va. 163 [60 S.E.2d 1, 23 A.L.R.2d 516], is in point. There the owner of a store in which groceries and soft drinks were sold conveyed two lots a short distance away by a deed containing a personal covenant that neither the grantees, nor their assigns, should sell groceries or bottled drinks in any building to be erected on the lots. The deed was recorded; the original grantees in turn conveyed the lots to another person who leased the premises to one who sold groceries and soft drinks. The original grantor sought injunctive relief, and, when the lower court denied the prayer, he appealed to the Supreme Court of Appeals of Virginia. That court reversed the trial court's decree and held that a personal restrictive covenant is enforceable against those taking with actual or constructive notice of the provision, that the deed imported constructive notice of the covenant and that appellant was entitled to an injunction so long as he conducted his own store for the sale of groceries and soft drinks. The annotation attached to a report of the case in 23 A.L.R.2d at page 520 etc., cites California authorities holding that ''[w]ithin the meaning of the principle permitting enforcement in equity, in proper cases, of a personal covenant concerning and applicable to land or an interest therein taken by a transferee of the covenantor, with notice thereof, it has become well settled that the constructive notice afforded by

recitals thereof or references thereto in a recorded deed which constitutes a part of the chain of title of the transferee is sufficient to bind him." (23 A.L.R.2d 526.) The following California cases are cited: *Los Angeles Terminal Land Co.* v. *Muir,* 136 Cal. 36 [68 P. 308]; *Berryman* v. *Hotel Savoy Co.,* 160 Cal. 559 [117 P. 677, 37 L.R.A. N.S. 5]; *Wayt* v. *Patee,* 205 Cal. 46 [269 P. 660]; *Guaranty Realty Co.* v. *Recreation Gun Club,* 12 Cal.App. 383 [107 P. 625].

It seems apparent that the Doo partners by providing for the insertion in the deed of the personal covenant against starting a competing business on the lot sold sufficiently protected themselves against what subsequently ensued; the plaintiffs are entitled to a judgment so holding, including an injunction against the defendants and damages.

The judgment is reversed.

Stone, J., concurred.

A petition for a rehearing was denied October 14, 1968.