[S.F. No. 23374. July 12, 1976.]

ERNEST H. RILEY et al.,
Plaintiffs, Cross-defendants and Respondents, v.
BEAR CREEK PLANNING COMMITTEE,
Defendant, Cross-complainant and Appellant;
HARVEY N. BLACK, JR., et al.,
Defendants and Appellants.

## COUNSEL

Stark, Stewart, Simon & Sparrowe, V. James Jackl, Cadwalader & Black and Harvey N. Black, Jr., for Defendant, Cross-complainant and Appellant and for Defendants and Appellants.

Franklin H. Tuttle, Richard E. Tuttle and Thomas S. Harte for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**THE COURT.**—In this proceeding, arising out of an effort by defendants Bear Creek Planning Committee and some of its members to enforce certain building restrictions alleged to control the construction of improvements on plaintiffs' real property, defendants appeal from a judgment quieting title in plaintiffs. After decision by the Court of Appeal, Third Appellate District, affirming the judgment, we granted a hearing in this court for the purpose of giving further consideration to the issues raised. Having made a thorough examination of the cause, we have concluded that the opinion of the Court of Appeal prepared by Presiding Justice Puglia and concurred in by Justices Janes and Evans correctly treats and disposes of the issues involved, and we adopt such opinion as and for the opinion of this court. Such opinion (with appropriate deletions and additions) is as follows:*

[ ] Central to the disposition of this appeal is the question whether or not plaintiffs' property is burdened by an equitable servitude for the benefit of other lots in the tract of which plaintiffs' property is a part.

On February 26, 1964, Alpine Slopes Development Company (hereinafter "grantor"), a limited partnership, by grant deed conveyed Lot 101 in Alpine Meadows Estates Subdivision No. 3, located in Placer County,

---

*Brackets together, in this manner [ ] *without enclosing material*, are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. In so doing, we adhere to a method of adoption employed by us in the past. (See *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 311, fn. 2 [70 Cal.Rptr. 849, 444 P.2d 481], and cases there cited.)

to Ernest H. and Jewel Riley, husband and wife.[1] The deed, recorded March 13, 1964, contains no restrictions upon the use of the plaintiffs' property nor is there any reference therein to any instrument purporting to impose restrictions upon Lot 101. In fact, at the time of the conveyance there was no document of record purporting to restrict the use of Lot 101.

On November 25, 1964, exactly nine months after the conveyance to plaintiffs, the grantor caused to be recorded with the Placer County Recorder a document entitled "Declaration of Covenants, Conditions, Restrictions and Reservations on Lots 72 through 116 of Alpine Meadows Estates Unit No. 3" (referred to hereinafter as "declaration"). The declaration was executed by an agent of the grantor and by him acknowledged on November 20, 1964. Preliminarily the declaration recites that grantor is the owner and subdivider of Lots 72 through 116 inclusive (which are particularly described therein by reference to a recorded map); that "it [grantor]* has established and does hereby establish a general plan for the improvement and development of said property and does hereby establish restrictions, easements, conditions, covenants and reservations upon and subject to which all of the aforementioned lots and parcels of said real property shall be improved and sold or conveyed by it as such owner, each and all of which is or are for the benefit of the [grantor]* and the owner of any part or parcel of said property or interest therein and shall apply to and bind the respective successors in interest of the owner or owners thereof and are, and each thereof is, imposed upon said property as a servitude in favor of each subsequent declarant and of each and every parcel of land therein as a dominant tenement or tenements . . . ." There follow 26 numbered paragraphs in which restrictions, covenants and conditions common to subdivision developments of the type here involved are spelled out which are to remain in full force and effect until January 1, 1983.

It is the plaintiffs' alleged violation of the provisions of paragraph 6 of the declaration that precipitated the instant controversy. Insofar as relevant, paragraph 6 provides: "No dwelling, garage, building, fence, wall, retaining wall or other structure or excavation therefor shall be

---

[1] By this deed plaintiffs took an undivided one-half interest in Lot 101 as joint tenants. The remaining one-half interest was by the same instrument conveyed to Frederick LaTour and Margaret LaTour, husband and wife. Prior to this dispute the LaTour interest was sold to the Rileys.

*Original brackets.

moved onto, commended, erected or maintained on said lots, nor shall any addition to, change, or alteration therein, be made until the plans and specifications for same have been submitted to the Bear Creek Planning Committee and the approval of said Committee has been secured, . . ."[2]

At a time not established by the record, the plaintiffs constructed a snow tunnel on their lot. In reaction thereto, on January 12, 1972, the committee recorded a "Notice of Violation of Covenants, Conditions and Restrictions." Referring specifically to Lot 101 and the declaration recorded November 25, 1964, the notice recited the "probable violation" of the provisions of the declaration in that "A covered walkway has been constructed on said lot 101 without prior compliance with Paragraph 6 of the above described recorded restrictions."

Thereafter plaintiffs filed their complaint to quiet title and for damages for slander of title and defendant cross-complained for declaratory relief. The resulting judgment quieted plaintiffs' title to Lot 101 against all claims of defendants and found for plaintiffs and against defendant on the latter's cross-complaint for declaratory relief.[3]

 Inasmuch as there is no privity of contract between defendants and plaintiffs, [ ] [defendants'] right to enforce use restrictions against plaintiffs depends upon whether or not the restrictions sought to be enforced are comprehended within mutually enforceable equitable servitudes for the benefit of the tract. (*Trahms* v. *Starrett* (1973) 34 Cal.App.3d 766, 772 [110 Cal.Rptr. 239]; *Ross* v. *Harootunian* (1967) 257 Cal.App.2d 292, 295 [64 Cal.Rptr. 537]; see *Girard* v. *Miller* (1963) 214 Cal.App.2d 266, 278-279 [29 Cal.Rptr. 359], dissenting opn. of Files, J.) The issue thus framed, [ ] [defendants'] claim founders upon the rule announced in *Werner* v. *Graham* (1919) 181 Cal. 174, at pages

---

[2]The record shows only that the Bear Creek Planning Committee is an unincorporated association, in existence at least since 1962, and purporting to exercise architectural control over structures erected in the tract containing plaintiffs' lot. Otherwise, considering that the committee claims control over the erection, placement or alteration of any building in the tract area, the record is remarkably silent concerning the origin, organization, operation and, of primary importance, source of jurisdiction of the committee. (Cf. *Russell* v. *Palos Verdes Properties* (1963) 218 Cal.App.2d 754 [32 Cal.Rptr. 488], wherein a nonprofit homeowners' association which itself owned none of the land involved was by contract with the grantor given authority for the benefit of the property owners to enforce restrictions similar to those involved herein; see also 51 A.L.R.3d 556, 587.)

[3]By stipulation the cause of action for slander of title was severed and continued for trial. It is not involved in this appeal.

183-185 [183 P. 945]: "It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance. As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. . . . [¶]* [H]*ere there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan. . . . [¶]* The intent of the common grantor—the original owner—is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. It is also apparent that each deed must be construed as of the time it is given. It cannot be construed as of a later date, and in particular, its construction and effect cannot be varied because of deeds which the grantor may subsequently give to other parties. . . . Whatever rights were created by the deed were created and vested [when it was given]*, and the fact that it later appears that [the grantor]* was pursuing a general plan common to all the lots in the tract cannot vary those rights. The same is true of each deed as it was given. Nor does it make any difference that, as claimed by the defendants, [the grantor]* gave each grantee to understand, and each grantee did understand, that the restrictions were exacted as part of a general scheme. Such understanding was not incorporated in the deeds, and as we have said, the deeds in this case constitute the final and exclusive

---

*Original brackets.

memorials of the understandings between the parties. Any understanding not incorporated in them is wholly immaterial in the absence of a reformation. [Citations.]* This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding." (See also *Murry* v. *Lovell* (1955) 132 Cal.App.2d 30 [281 P.2d 316].) [4]

 From the recordation of the first deed which effectively imposes restrictions on the land conveyed and that retained by the common grantor, the restrictions are binding upon all subsequent grantees of parcels so affected who take with notice thereof notwithstanding that similar clauses have been omitted from their deeds. (*Werner* v. *Graham, supra,* at pp. 183-184; *Martin* v. *Holm,* [*supra*], 197 Cal. 733, 746-748; *Girard* v. *Miller, supra,* 214 Cal.App.2d at pp. 275-276; *Seaton* v. *Clifford* (1972) 24 Cal.App.3d 46, 50 [100 Cal.Rptr. 779]; *Trahms* v. *Starrett, supra,* 34 Cal.App.3d at p. 771.) Neither proof nor contention is made that plaintiffs are grantees subsequent to the recordation of such a deed with notice thereof and, quite apart from the rule of *Werner* v. *Graham,* it is manifest that acknowledgement and recordation of a declaration of restrictions by the grantor after the conveyance to plaintiffs cannot affect property in which the grantor no longer has any interest.

To surmount the obstacle erected by the rule of *Werner* v. *Graham,* defendants postulate an analysis of the pertinent law dependent upon the following premises: parol evidence is admissible to explain the terms of a deed to the same extent as with contracts generally; the rule of *Werner* v. *Graham* is a function of and predicated upon the parol evidence rule; the modification of the parol evidence rule accomplished by *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], therefore operated in effect to overrule *Werner* v. *Graham sub silentio.* Accordingly, defendants conclude, extrinsic evidence is admissible to establish

---

*Original brackets.

[¹The *Murry* case, a leading authority in the *Werner* line, makes clear that even if the restrictions here in question had been recorded prior to the issuance of plaintiffs' deed, no equitable servitude would have been created absent the inclusion of such restrictions, by recitation or incorporation, in the deed. Compare *Martin* v. *Holm* (1925) 197 Cal. 733 [242 P. 718], wherein the deed to defendants contained no restrictions but they took with record notice of a prior deed establishing reciprocal servitudes binding upon their grantor.]

the mutual intention of the parties to the conveyance to plaintiffs that it be subject to restrictions identical to those contained in the declaration recorded subsequently by the grantor and specifically in paragraph 6 thereof.

In furtherance of this theory, defendants at trial offered extrinsic evidence of the understanding of the plaintiffs and their grantor. The evidence was received provisionally, subject to the trial court's later ruling on plaintiffs' continuing objection thereto and motion to strike based both on the parol evidence rule and the principle (stated in *Werner* v. *Graham, supra,* at p. 185) that the evidence was irrelevant as the deed is conclusive of the parties' intention with respect to mutually restrictive covenants. In summary, the challenged evidence tended to prove that the grantor intended to convey and plaintiffs intended to purchase a parcel which both parties assumed to be governed by building restrictions; that prior to purchase plaintiffs' attention had been directed to the existence of the assumed restrictions and for the first several years of their occupancy of the lot, they conducted themselves in compliance with what they understood to be binding controls upon the use of the property. The trial court, regarding *Werner* v. *Graham* as controlling, granted plaintiffs' motion to strike all extrinsic evidence of the intention of the parties. Defendants assign the ruling as reversible error.

We have no quarrel with the initial premise upon which defendants' theory of the case is predicated, i.e., the admissibility of parol evidence where otherwise proper to explain the terms of a deed. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521-523 [67 Cal.Rptr. 761, 439 P.2d 889]; *Masterson* v. *Sine, supra,* 68 Cal.2d 222; Civ. Code, § 1066.) However, we cannot agree with the second postulate of defendants' theory, i.e., that the parol evidence rule supplies the exclusive rationale underlying the doctrine of *Werner* v. *Graham.*

■ The parol evidence rule operates to bar extrinsic evidence which contradicts the terms of a written contract. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 204.) It "is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the

'integration'), *becomes the contract of the parties.* The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." (Italics in original.) (*Estate of Gaines* (1940) 15 Cal.2d 255, 264-265 [100 P.2d 1055]; see *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 22-23 [92 Cal.Rptr. 704, 480 P.2d 320].)

■ In contrast to the rationale of the rule barring parol evidence, the "Purpose of the statute of frauds is to prevent fraud and perjury with respect to certain agreements by requiring for enforcement the more reliable evidence of some writing signed by the party to be charged . . . ." (*Sousa* v. *First California Co.* (1950) 101 Cal.App.2d 533, 542 [225 P.2d 955].) Thus the statute of frauds excludes proof of certain types of agreements which are not sufficiently evidenced by a writing. (1 Witkin, Summary of Cal. Law, *supra,* § 204.) Every material term of an agreement within the statute of frauds must be reduced to writing. No essential element of a writing so required can be supplied by parol evidence. (*Ellis* v. *Klaff* (1950) 96 Cal.App.2d 471, 476 [216 P.2d 15]; Witkin, Cal. Evidence (2d ed. 1966) § 716.) Among the types of agreement to which the statute of frauds applies are contracts for the sale of real property or an interest therein (Civ. Code, § 1624, subd. 4; Code Civ. Proc., § 1971) and agreements which by their terms are not to be performed within a year (Civ. Code, § 1624, subd. 1; see *Long* v. *Cramer Meat & Packing Co.* (1909) 155 Cal. 402 [101 P. 297].) [5]

■ In *Masterson* v. *Sine, supra,* 68 Cal.2d 222, [ ] [this court] abandoned the rule that evidence of oral agreements collateral to an agreement in writing must be excluded where the instrument on its face appears to be an integration. Rather, the court held that credible extrinsic evidence of a collateral oral agreement is admissible if, considering the circumstances of the parties, the agreement is one which " 'might naturally be made as a separate agreement.' " (P. 228.) Defendants contend that under the rule announced in *Masterson,* the extrinsic evidence which was stricken by the court was credible evidence

---

[5] In the *Long* case, the predecessors in interest of plaintiffs and defendant entered into a parol agreement before they acquired certain lands as tenants in common. The agreement, of indefinite duration, provided that the lands were not to be used to herd or graze sheep. Defendant was the grantee of the covenantor and took with notice of the restriction. Plaintiffs' attempt to enforce the restriction against defendant was rebuffed by the court because the agreement, not to be performed within a year, rested wholly in parol and thus "did violence to the statute of frauds. . . ." (P. 406.)

admissible to show the collateral oral understanding of plaintiffs and their grantor that Lot 101 be subject to the restrictions which defendants seek here to enforce.

[ ] [Although certain language in our *Werner* case was susceptible of the conclusion that the principle there announced had its roots in the parol evidence rule, our decision four years later in *McBride* v. *Freeman* (1923) ·191 Cal. 152 [215 P. 678], made it clear that other considerations were of greater importance. There, in strongly reaffirming our adherence to *Werner* in the face of a vigorous frontal attack upon it, we stated:] "Any other rule would make important questions of the title to real estate largely dependent upon the uncertain recollection and testimony of interested witnesses. The rule of the *Werner* case is supported by every consideration of sound public policy which has led to the enactment and enforcement of statutes of frauds in every English-speaking commonwealth." (P. 160.) (See also *Triangle Ranch, Inc.* v. *Union Oil Co.* (1955) 135 Cal.App.2d 428, 438-439 [287 P.2d 537]; 5 A.L.R.2d 1316, 1343-1344.)

In *Wing* v. *Forest Lawn Cemetery Assn.* (1940) 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120], [ ], referring to the policy underlying the *Werner* rule, [we] quoted with approval Professor Burby (10 So.Cal.L.Rev. 281, 289, fn. 21) who observed that "[t]here should be some *written* evidence, either in the form of a plat of [*sic*]* otherwise, delineating or pointing out the extent of the property affected by the restrictions. . . . As a matter of policy, the understanding of the parties should be definite and clear, and should not be left to mere conjecture." (Italics added.) (15 Cal.2d at p. 480.)

The proposition that the rule of *Werner* v. *Graham* springs from the same policy considerations as underlie the statute of frauds is further bolstered by *Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169 [107 Cal.Rptr. 76, 507 P.2d 964]. In that case [ ] [we] held that a building restriction in a deed constitutes property, thus entitling the owner of the dominant tenement to compensation for damage caused by construction of an improvement in violation of the restriction by a condemnor exercising the power of eminent domain over the servient tenement. In so deciding [ ] [we] abandoned the rule of longstanding, first announced in *Friesen* v. *City of Glendale* (1930) 209 Cal. 524 [288 P. 1080], that a building restriction gave rise not to a right in the land itself but to a mere

---

*Original brackets.

contractual right cognizable in equity between the contracting parties or their successors with notice.

We recognize that a deed poll such as used here and commonly throughout California does not satisfy the requirement of the statute of frauds that the written memorandum be subscribed by the party to be charged [when that party is the grantee.] (Civ. Code, § 1624; 1 Witkin, Summary of Cal. Law, *supra*, § 210.) [6] Notwithstanding the lack of complete congruity of common conveyancing practice in the creation of so-called negative easements to the requirements of the statute of frauds, we are of the view that the doctrine of *Werner* v. *Graham*, though undoubtedly a function in part of the parol evidence rule, is not exclusively so; that independently therefrom it derives vitality from the policies underlying and implemented by the statute of frauds; that as a consequence, it remains a viable "rule of property" ([*McBride* v. *Freeman*, *supra*, 191 Cal. 152, 155;] *Girard* v. *Miller*, *supra*, 214 Cal.App.2d at p. 275) unimpaired and unaffected by subsequent modifications of the parol evidence rule.

Moreover, there is a practical consideration favoring the rule of *Werner* v. *Graham*. The grantee of property subject to mutually enforceable restrictions takes not just a servient tenement but, as owner of a dominant tenement, acquires a property interest in all other lots similarly burdened for the benefit of his property. That fact significantly affects the expectations of the parties and inevitably enters into the exchange of consideration between grantor and grantee. Even though the grantor omits to include the mutual restrictions in deeds to parcels thereafter severed from the servient tenement, those who take such property with notice, actual or constructive, of the restrictions are bound thereby. (*Arrowhead Mut. Service Co.* v. *Faust* (1968) 260 Cal.App.2d 567, 580 [67 Cal.Rptr. 325].) Thus, the recording statutes operate to protect the expectations of the grantee and secure to him the full benefit of the exchange for which he bargained. (*Wayt* v. *Patee* (1928) 205 Cal. 46, 49 [269 P. 660]; *Doo* v. *Packwood* (1968) 265 Cal.App.2d 752, 758-759 [71 Cal.Rptr. 477]; *Barbieri* v. *Ongaro* (1962) 208 Cal.App.2d 753, 757 [25 Cal.Rptr. 471].) Where, however, mutually enforceable equitable servitudes are sought to be created outside the recording statutes, the vindication of the expectations of the original grantee, and for that matter succeeding grantees, is hostage not only to the good faith of the

[6] However, the acceptance by the grantee of a deed poll containing a covenant to be performed by him binds him to performance thereof. (*Grange Co.* v. *Simmons* (1962) 203 Cal.App.2d 567, 573 [21 Cal.Rptr. 757].)

grantor but, even assuming good faith, to the vagaries of proof by extrinsic evidence of actual notice on the part of grantees who thereafter take a part of the servient tenement either from the common grantor or as successors in interest to his grantees. The uncertainty thus introduced into subdivision development would in many cases circumvent any plan for the orderly and harmonious development of such properties and result in a crazy-quilt pattern of uses frustrating the bargained-for expectations of lot owners in the tract.

 [Finally, although defendants in their briefs before the trial court expressly indicated that they placed no reliance on the doctrine of estoppel, we think it appropriate to observe, for the guidance of the courts in future cases, that that doctrine has no application in this area. Equitable servitudes in land may be created in this state only by deed, and the expectations of the parties, reasonable or otherwise, are wholly without relevance in the absence of language in the deed having the legal effect of creating such a servitude. (*Martin* v. *Holm, supra,* 197 Cal. 733, 742-743; *Murry* v. *Lovell, supra,* 132 Cal.App.2d 30, 34-35.) To the extent it is inconsistent herewith, the case of *Smith* v. *Rasqui* (1959) 176 Cal.App.2d 514 (1 Cal.Rptr. 478), is disapproved.]

The trial court correctly struck extrinsic evidence of the intention of plaintiffs and their grantor. [7]

[ ] [The judgment is affirmed.]

**TOBRINER, J.**—I dissent.

I cannot subscribe to the majority's conclusion that a buyer of a subdivision lot, who takes his deed with actual knowledge of a general plan of mutual restrictions applicable to the entire subdivision and who conducts himself for many years in a manner which demonstrates his belief that such restrictions apply to his property, may thereafter violate all such restrictions with impunity simply because the restrictions were

[7Nothing we have said in this opinion should be interpreted to cast any doubt upon the principle, reiterated by us above, that extrinsic evidence may be admissible to explain the terms of a deed. (*Continental Baking Co.* v. *Katz, supra,* 68 Cal.2d 512, 521-523, and authorities there cited.) While equitable servitudes restricting the free use of land may be created only by a deed setting forth the restriction (or referring to a recorded declaration of restrictions) and identifying the dominant land or lands, the interpretation of the terms creating such a servitude—in the matter of scope, for instance—is governed by normal principles relative to the admission of extrinsic evidence. (Cf. *Buehler* v. *Oregon-Washington Plywood Corporation, post,* at p. 520 [131 Cal.Rptr. 394, 551 P.2d 1226].)]

inadvertently omitted from his individual deed. Contrary to the majority's suggestion, we need not decree this inequitable result in order to prevent fraud to maintain security in land titles; the very antithesis—a ruling that a buyer with *actual knowledge* of restrictions is thereby bound—ensures fairness and promotes security in land transactions; it implements the intention of both the buyer and the seller. As I shall explain, the majority can sustain their forced result only by ignoring a host of recent decisions of this court which have abandoned the antiquated rule that "property rights" can be ascertained only within the "four corners of a deed."

In the present case, defendants offered proof to establish that (1) prior to their purchase of the lot, plaintiffs received copies of the written restrictions, the bylaw of defendant committee and the real estate commissioner's public report, which stated that the subdivision lots were subject to building restrictions; (2) because of a mistake by the title company, plaintiffs' deed did not contain the restrictions and was recorded prior to recording of the declaration of restrictions; and (3) despite the mistakes of the title company, plaintiffs conducted themselves in accordance with the restrictions for a number of years, seeking defendant committee's approval for the construction of a home and the removal of a tree on their lot. Thus the evidence offered by defendants would demonstrate that plaintiffs took their deed with the understanding that the lot was subject to valid restrictions.

The majority's holding will permit plaintiffs in this case to ignore restrictions designed to preserve natural beauty and property values in a carefully planned residential community. Although the use of all other lots in the community will continue to be restricted, plaintiffs will be free to subdivide their land into any number of small building sites, construct apartments or rent commercial space, ignore building lines and obstruct views from neighboring lots, raise livestock, and strip the land by removing trees and shrubs.

Common sense and substantive justice dictates that the plaintiffs should not be free to violate such restrictions. At the time of purchase plaintiffs had actual knowledge of those restrictions; the restrictions formed a part of the consideration exchanged by the parties. The restrictions continue to enhance the value of plaintiffs' individual lot because all other property owners in the subdivision are bound thereby. As I shall explain, the intent of the parties should govern, and the rule of

*Werner* v. *Graham* (1919) 181 Cal. 174 [183 P. 945], which forbids proof of intent by extrinsic evidence should be rejected, as indeed it has been by virtually every other state. (2 American Law of Property (Casner ed. 1952) § 9.29, p. 417.)

The majority holds that recent decisions of this court modifying the parol evidence rule do not affect the validity of the holding in *Werner* v. *Graham,* because that decision did not rest primarily on the parol evidence rule. The language of *Werner* itself compels a different conclusion. As the majority notes, the parol evidence rule excludes extrinsic evidence as to the terms of an agreement, not because the probative value of such evidence is questioned, but because as a matter of substantive law the writing constitutes the complete agreement between the parties. The language of *Werner* clearly indicates that the decision applied the parol evidence rule; the court stated that "the deeds in this case constitute the final and exclusive memorials of the understandings between the parties. Any understanding not incorporated in them is wholly immaterial . . . ." (At p. 185.)

Although the majority suggests that *Werner* rests on policies underlying the statute of frauds, the *Werner* court did not so much as discuss that statute. The issue in Werner turned on whether the parties intended the restrictions contained in a deed to create either an equitable servitude enforceable by other landowners in the subdivision or to constitute merely personal covenants inuring solely to the benefit of the grantor. The court held that the parol evidence rule mandated that intent of the parties be ascertained from the face of the deed; the decision does not hold, or even imply, that any policy underlying the statute of frauds would be violated if the intended effect of written restrictions were to be proven by extrinsic evidence.

Contrary to *Werner* v. *Graham,* most states allow proof intent by extrinsic evidence (7 Thompson on Real Property (1962 Replacement) § 3163, pp. 125-126; 2 American Law of Property (Casner ed. 1952) § 9.29, pp. 416-419); these decisions turn on the interpretation of the policies underlying the parol evidence rule (e.g., *Clem* v. *Valentine* (1928) 155 Md. 19 [141 A. 710]; *Ridley* v. *Haiman* (1932) 164 Tenn. 239 [47 S.W.2d 750]), not upon the policies of the statute of frauds. Indeed, despite dictum in *McBride* v. *Freeman* (1923) 191 Cal. 152 [215 P. 678], suggesting that the statute of frauds supplied the rationale for the *Werner* decision, subsequent California cases have recognized that exclusion of

extrinsic evidence in interpretation of deeds emanates from the parol evidence rule. (E.g., *Moore* v. *Ojai Improvement Co.* (1957) 152 Cal.App.2d 124 [313 P.2d 47]; *Murphy Slough Assn.* v. *Avila* (1972) 27 Cal.App.3d 649 [104 Cal.Rptr. 136].)

*Werner* v. *Graham*, then, is based upon the strict parol evidence rule then in effect in California; consequently its holding must be reexamined in light of recent decisions of this court which modify the application of the parol evidence rule. In *Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561], we rejected the principle that parol evidence as to the terms of an agreement is inadmissible simply because the written memorandum appears on its face to be an integration. We recognized that "The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement," (at p. 225) and noted that application of the "face of the document" test would "often defeat the true intent of the parties." (At p. 227.) Accordingly, we held that "Evidence of oral collateral agreements should be excluded only when the fact finder is likely to be misled. The rule must therefore be based on the credibility of the evidence." (At p. 227.)

Thereafter, in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], this court extended the holding of *Masterson* v. *Sine* to cases in which extrinsic evidence was offered which would disturb the "plain meaning" of the document. We stated, "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (At p. 37.) In *Thomas Drayage* as in *Masterson* v. *Sine*, we emphasized that the actual intent of the parties should govern the interpretation of their agreement.

The modifications of the parol evidence rule announced in *Masterson* v. *Sine* and *Thomas Drayage* apply to the interpretation of deeds as well as contracts. (Civ. Code, § 1066; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 521-522 [67 Cal.Rptr. 761, 439 P.2d 889]; *French* v. *Brinkman* (1963) 60 Cal.2d 547, 552-553 [35 Cal.Rptr. 289, 387 P.2d 1].) In *Continental Baking Co.* v. *Katz, supra,* we upheld the admissibility of extrinsic evidence to show that the parties actually intended, an easement expressed in a deed as appurtenant to a small parcel of land to

be appurtenant to a different, larger parcel not described in the deed. In *Murphy Slough Assn.* v. *Avila, supra,* 27 Cal.App.3d at page 654, the court held that extrinsic evidence was admissible to prove that the parties intended and understood a grant deed conveying a fee interest to convey only a right of way.

The reasoning of the court in *Murphy* illustrates the proper application of our decisions in *Masterson* v. *Sine* and *Thomas Drayage* to the interpretation of deeds. The court noted initially that "grants are to be interpreted in the same way as other contracts and not according to rigid feudal standards." (At p. 655.) The grant involved was silent as to riparian rights, and the court reasoned that this silence, together with the nominal consideration of $10 paid by the grantee, raised a doubt as to the interest conveyed. The court therefore admitted extrinsic evidence to prove the parties' actual understanding concerning riparian rights, although the "plain meaning" of the document was to grant a fee simple absolute. In holding that the interest conveyed actually constituted a right of way, the court emphasized that "Subsequent acts of the parties to the transaction which disclose the interpretation given to the conveyance by themselves is strong evidence of the interest conveyed." (At p. 658.)

The present case presents a situation similar to that encountered by the court in *Murphy.* Plaintiffs' deed does not refer to building restrictions; it does not specifically state that the land is free from all such restrictions. The deed does, however, identify the lot conveyed as a particular parcel within a large subdivision known as "Alpine Meadows Estates Subdivision No. 3." The deed's silence with respect to restrictions. coupled with its reference to the subdivision, raises a doubt as to whether the lot in question was sold pursuant to a common scheme of restricted development for the entire subdivision. The language of the deed does not preclude an underlying understanding that the lot was subject to building restrictions. As in *Murphy,* the acts of the parties in the present case subsequent to the sale of plaintiffs' lot constitute strong evidence that the restrictions were applicable to the property.

Thus our decision in *Masterson* v. *Sine, supra,* and *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* sanction the admission of the evidence offered by defendant committee to establish the intention of the parties that the restrictions governing the use of land in the subdivision bind plaintiffs' property, even though the deed appears on its face to convey the lot without such restrictions. The requirement of *Masterson*

that the proffered evidence be "credible" is met; the restrictions were embodied in a writing which plaintiffs received before they bought their lot. Proof of the terms of the understanding between the parties will not, therefore, be "dependent upon the uncertain recollection and testimony of interested witnesses." (*McBride* v. *Freeman, supra,* 191 Cal. 152, 160.)

I believe, therefore, that in light of this court's modification of the parol evidence rule, *Werner* v. *Graham* is no longer a correct application of existing law and should be overruled. The question remains, however, whether, as the majority maintains, the policy underlying the statute of frauds provides an independent basis for rejecting the evidence offered by defendants. That policy, as the majority points out, is to prevent fraud and perjury with respect to certain types of transactions by requiring the most reliable evidence available, a written document. In the present case, however, insistence upon a writing signed by both grantor and grantee is not necessary to prevent fraud, and such a requirement should not be invoked to frustrate the intention of the parties.

The courts of this state have frequently recognized situations in which circumstances surrounding a transaction render the production of a writing signed by both parties unnecessary, and accordingly have established a number of exceptions to the application of the statute. As the majority notes, a deed poll containing restrictions binding upon the grantee does not satisfy the requirements of the statute of frauds, since it is not subscribed by the party to be charged. The courts have held, however, that such deeds are enforceable against the grantee. (*Grange Co.* v. *Simmons* (1962) 203 Cal.App.2d 567, 573 [21 Cal.Rptr. 757].) In the present case, the grantor gave a written document containing the restrictions to the grantee, and the fact that the document was, like a deed poll, not signed in accordance with the requirements of the statute of frauds should not result in the exclusion of the document as evidence of the parties' understanding. The courts have further modified the application of the statute of frauds by holding that once the grantor has given one deed creating restrictive covenants binding on subdivision land to a purchaser, subsequent grantees from the same grantor who have *actual notice* of the restrictions are bound thereby, although no restriction or reference thereto is contained in their individual deeds. (*Arrowhead Mut. Service Co.* v. *Faust* (1968) 260 Cal.App.2d 567, 580 [67 Cal.Rptr. 325].) Likewise in the present case, plaintiffs took their deed with actual notice of the restrictions at issue.

Moreover, in the area of land transactions, our courts have given effect to oral agreements conveying an interest in land on the basis of the doctrine of part performance. (See Note, *Part Performance, Estoppel, and the California Statute of Frauds* (1951) 3 Stan.L.Rev. 281.) That doctrine represents a recognition of the inequities which will result if the courts refuse to enforce an agreement partially performed by one of the parties. Such part performance must, however, be clearly a performance of the oral contract and not of some other obligation between the parties. As the court explained in *Trout* v. *Ogilvie* (1919) 41 Cal.App. 167, 172 [182 P. 333], "To take a contract out of the operation of the statute of frauds, however, the acts relied upon must be unequivocally referable to the contract." (See *Magee* v. *Magee* (1917) 174 Cal. 276 [162 P. 1023]; *Manning* v. *Franklin* (1889) 81 Cal. 205 [22 P. 550].)

In the present case, both parties have performed acts "unequivocally referable" to their understanding that all the lots in the subdivision, including plaintiffs', were subject to building restrictions. The grantor filed the plat containing the restrictions, and conveyed all subsequent deeds subject to those restrictions. The plaintiffs complied with the restrictions by submitting plans for construction on the lot to defendant committee, and by seeking approval of the committee for the removal of a tree from the lot. The only reasonable explanation for this behavior by plaintiffs is that such actions were taken pursuant to the understanding between plaintiffs and their grantor that the lot was subject to subdivision restrictions. The agreement between plaintiffs and their grantor can, therefore, be enforced despite the policy of the statute of frauds favoring formalized writings; indeed, other states have enforced such agreements. (See *Hall* v. *Solomon* (1892) 61 Conn. 476, 483-484 [23 A. 876].)

In summary, I believe that *Werner* v. *Graham* should be overruled, and that the evidence offered by defendants should be admitted to establish that plaintiffs took their lot subject to the building restrictions, which continue to bind the rest of the property owners in the subdivision, and that plaintiffs, indeed, conducted themselves in accordance with such restrictions for many years. To hold otherwise would defeat the actual intent of the parties; it would allow plaintiffs to reap the benefits of their neighbors' restrictions while, as to their own lot, they enjoy complete freedom.

Further, plaintiffs have filed suit against defendant committee for slander of title; the majority's holding thus could allow plaintiffs to

collect damages from the committee for its attempt to enforce restrictions which plaintiffs understood to govern their land when they took their deed. The majority's rigid adherence to the rule of *Werner* v. *Graham* as a "rule of property" conflicts with our previous recognition that "our courts no longer feel constricted by feudal forms of conveyancing . . . grants are to be interpreted in the same way as other contracts and not according to rigid feudal standards." (*Willard* v. *First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 476 [102 Cal.Rptr. 739, 498 P.2d 987].)

Accordingly, I would hold that the evidence offered by defendant committee is admissible to establish the existence of building restrictions binding upon plaintiffs.