[Civ. No. 20022.   Second Dist., Div. Two.   Apr. 8, 1954.]

WALTER WILKMAN et al., Respondents, v. LYLE H. BANKS et al., Appellants.

Don Lake and Val Linton for Appellants.

Robert H. Green for Respondents.

MOORE, P. J.—The question for decision is whether the facts in evidence equitably justify the enforcement of the restrictions against the maintenance of a sanitarium on the city lot of appellants.

### THE FINDINGS

The court below made findings that defendants own Lot A in tract 9854; that plaintiffs own lots in the same tract, and that without contradiction plaintiffs occupy their property as a home. A general plan of restriction inhibits the maintenance of a hospital or sanitarium on any parcel of the tract. Such restrictions were in full force at the time defendants acquired Lot A and are still in effect. Defendants have violated such restrictions in that they established and now conduct an alcoholic sanitarium on Lot A. The character of the tract has not changed. Lot A is still usable as resi-

dential property. While the tract has been rezoned as C-2 prior to appellants' acquisition of Lot A, it would not be unjust or unreasonable to enforce the restrictions. Neither plaintiff has been guilty of laches or of unreasonable delay. While defendants have made additions to and alterations of the structure on Lot A, it is still conformable to and suitable for the general plan.

Upon such findings, judgment was entered enjoining defendants from maintaining a hospital, a sanitarium or an institution of like nature upon Tract 9854. Appellants now demand reversal of the judgment on the ground that the evidence does not support the findings. A review of the entire record is required in order to demonstate the fallacy of such contention.

### The Proof

The facts established by the adopted evidence show that in 1928 and in 1932 a general plan of restrictions was imposed upon Tract 9854 of which Lot A is a parcel. The plan prohibits the operation of a hospital or sanitarium on any portion of such tract. In 1948, the Los Angeles City Planning Commission rezoned the tract to zone C-2 which authorizes the maintenance of a sanitarium. Two years after such change had been made appellants purchased Lot A; and before the acquisition they learned from their inquiries that a C-2 zone permits the operation of a sanitarium. At the time of purchase, appellants had no actual knowledge of the deed restrictions but learned of them from respondents about two weeks prior to the filing of this action, August 7, 1952. It was stipulated that (1) appellants acquired their title in October, 1950, while the general plan of restrictions was in full force and effect and a part of the public records in the office of the county recorder; and (2) appellants were conducting a sanitarium as prohibited by the general plan. It was proved that respondent Wilkman owns Lot 3 which is so near Lot A that only one vacant lot lies between 3 and A; that appellants Banks and Hague own Lot A; that the latter had, on June 23, 1952, completed substantial improvements on the premises at a cost of $11,000 with a view to increasing its serviceability as a sanitarium; that on July 1, 1952, they obtained an annual license from the State Department of Mental Hygiene. They made no change in the interior walls, but in November, 1950, posted a sign, "Colonial House," otherwise exhibiting nothing to indicate that it was a boarding house or "rest home."

The deed of conveyance to appellants contains the provision that their title is "subject to covenants, conditions, restrictions, reservations, rights and easements." Such language was clearly intelligible and Mr. Banks was an experienced and intelligent man. He had operated as a real estate broker or salesman for 10 years with a prominent firm of brokers for whom he had bought or sold more than 100 parcels of property. He had discussed with his vendors the plan of operating a sanitarium. They told him that such an institution could not be kept if liquor were dispensed or used on the premises. He could not explain why he had not read the restrictions. But he did recall that he had told his vendors that he was going to operate an old people's boarding house which, in fact he did for more than 20 months prior to the date of his license from the Department of Mental Hygiene. But after learning of the restriction against dispensing alcohol on the premises, Mr. Banks made no inquiry as to whether the maintenance of a sanitarium on Lot A was forbidden by his deed. Both appellants testified that they had made no examination of the restrictions as to the use of the property prior to their receipt of respondents' letter advising them of appellants' violation and of the intended action to enforce the restrictions. Although Miss Hague paid $35,000 for Lot A and its improvements and read the conveyance prior to close of escrow with its "restrictions, reservations," etc., she made no inquiry about the restrictive contents of the deed, but during her first month as a licensee of the Department of Mental Hygiene, she received her first alcoholic patient. She has been a registered nurse since 1926, specialized in alcoholics, and is licensed to care for 21 patients.

Respondent Wilkman is a licensed architect. As such, on behalf of the former owner of Lot A, he made a survey of the entire building for the purpose of determining its availability as an apartment house. He concluded that the structure could be converted to bachelor apartment units; five single units on the first floor, three on the second floor and that the garage could be so reconstructed as to add two additional units. He had no knowledge as to the operation of an alcoholic sanitarium in the Colonial House prior to May or June, 1953, when he was apprised of the fact by his wife.

Appellants conceive that because they have made substantial alterations and improvements on the property they would suffer unjustly to be now deprived of the right to use it. They cite the testimony of their witness Thompson, an

experienced real estate operator, that as a residence the Colonial House is worth only $26,500, whereas if used as a sanitarium it is worth practically double that sum. Also, they argue "there cannot be any real dispute as to the fact that defendants will suffer irreparable and great damage if they be enjoined from operating a sanitarium." In such event, they argue, "not only will they lose a valuable, going business, which was built with incessant diligence over a period of years, but defendants will also lose the only use of their property to which it is presently suitable" and its value would be reduced by more than $26,500. But does that answer the charge of violating a solemn contract with the owners of the tract? Why should appellants assert their zeal to make money and to enhance the financial value of their property by operating an objectionable business to the detriment of their neighbors? Is not the peace of mind, the quietude of one's home, freedom from scenes of horror, from noises of boisterous, drunken men worth more than fine gold?

Appellants cry with alarm against the enforcement of an agreement they and their predecessors had made to preserve the homelike character of their community and make the novel plea that it is unreasonable and unjust for a court to enforce the compact. We know of no authority to warrant the ruthless renouncement of a contract made to preserve and protect the rights of the contracting parties.

The fact that the city of Los Angeles had rezoned Tract 9854 to allow the construction of hospitals and sanitariums therein is not authority to violate the restrictive covenants. An act of sovereignty with respect to lands already restricted by a general plan against specified uses confers no authority to violate the existing restrictive covenants as to use. One is a legislative enactment for the general good, authorized by the police power and confers a merely permissive right; the other is a contract of individuals made for their own enjoyment, is protected by the federal Constitution (art. I, § 10) and in no sense interferes with a zoning ordinance.

The latter becomes effective for tract 9854 only after the restrictive covenants in the deeds of the lot owners shall have expired.

Moreover, appellants suffer no hardship by virtue of the judgment. They still have their property. Other than the installation of an automatic sprinkler system, the fire apparatus and the fire door, no substantial changes have been made in the house. Not a wall was removed. Also, its

potential for becoming a compliant and conforming structure with excellent earning power is not to be disregarded. The building can be converted into an apartment house which could utilize to advantage the improvements already effected.

## LACHES

Appellants assert the finding that respondents have not been guilty of laches is not supported. They say that they purchased Lot A on October 20, 1950, commenced at once the alterations, completed the changes in January 1951 and since then have operated a sanitarium. They argue that inasmuch as respondent Wilkman lived near Lot A, that because he as an architect was familiar with their house and daily saw the additions and alterations in the making, "he could not help but be aware" of the nature of the occupancy of appellants shortly after January 1951, but filed this action in August 1952. No such deduction is to be necessarily drawn from the evidences visible to Mr. Wilkman. A busy man who does not remain at home on workdays is not likely to observe the occurrences on a neighbor's premises. Had not the tradesman on the beat imparted news of the presence of the alcoholic sanitarium to Mrs. Wilkman in the summer of 1952, further delays in filing suit might have resulted. No neighbor appears to have made the discovery sooner. Appellants' witness Devine who lives across the street from Lot A "wasn't even aware that there was an operation of any kind. The place looks the same to me as before." He learned of the sanitarium there "about a week" prior to the first day of trial, December 11, 1952. Although the registered name of the place is "Colonial House Rest Home," appellants maintained a sign, "Colonial House." Such sign could not reasonably be said to constitute a notice that an alcoholic sanitarium was there. Neither the sign nor the visible repairs and alterations could, at the risk of waiving a violation of restrictions, have required respondents to scrutinize the activities of appellants to ascertain whether they were violating the restrictions. (*Morgan* v. *Veach,* 59 Cal.App.2d 682, 689 [139 P.2d 976].) The contents of section 19 of the Civil Code that "every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact" do not mean that the "circumstances" are to be interpreted by the party who relies upon them. The trial court who heard the evidence was in a position to determine whether the circumstances in evidence were suffi-

cient to constitute notice of the presence of an alcoholic sanitarium. By its finding of no laches, the court impliedly found that nothing had occurred to put respondents on notice of a violation.

Appellants contend that there is not one iota of proof in the entire transcript to support the finding that respondents will suffer irreparable harm by appellants' maintenance of a sanitarium on Lot A. But after hearing from appellants that they received, kept and treated alcoholic patients, administered to them morphine, demerol and kindred narcotics, the trial judge, not without good reason, found that "plaintiffs will suffer irreparable harm." Is there any means of measuring the baneful influence upon a tender child of the wails, the moans, the shuffling of a drunken man or the hours of anxiety of a mother who constantly fears that at any hour a miserable alcoholic may walk into her home. "Stone walls do not a prison make."

But as to every finding there is some fact proved which in itself or by the natural inference to be drawn from it, reasonably supports such finding.

## The Law

This brings us to declare again the law respecting findings and attacks made upon them as unsupported. █ The evidence must be so construed as to support the finding (*Patten & Davies Lbr. Co.* v. *McConville,* 219 Cal. 161, 164 [25 P.2d 429]); every favorable and reasonable inference must be drawn from the facts to support the judgment. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) █ It is incumbent upon the appellant to show such a lack of substantial facts that the reviewing court may say as a matter of law that there is no ground upon which the trial court could have based a reasonable inference in support of its finding. Unless such showing is made, reversal cannot be had. (*Richards* v. *Plumbe,* 116 Cal.App.2d 132, 134 [253 P.2d 126].) Under the doctrines thus announced, no basis exists for reversing the judgment.

## A New Tack

█ Appellants assert that the judgment is error in that the injunction bears heavily upon them without benefiting respondents. In the first place, preventing appellants from using the property as a sanitarium is not unduly oppressive. They knew its use for a sanitarium was not lawful when they acquired it and when they made the improvements and ad-

ditions to equip it for hospital operations. Their disregard for their contract and their contempt for the law are not to be rewarded by a judicial declaration that an injunction would hurt them and effect no benefit for respondents. That the latter are aided by the judgment can hardly be denied. It restores their community to the status quo, assures them of peaceful days and silent nights and drives away the fears and visions of unpleasant visitors upon their premises or in their environs.

The authorities cited by appellants (*Downs* v. *Kroeger* (1927), 200 Cal. 743, 748 [254 P. 1101]; *Bickell* v. *Moraio* (1933), 117 Conn. 176 [167 A. 722]; *Forstmann* v. *Joray Holding Co.* (1926), 244 N.Y. 22 [154 N.E. 652]; *McClure* v. *Leaycraft* (1905), 183 N.Y. 36 [75 N.E. 961]) are not apropos where, as in this action, the court on substantial evidence has found the violations of the restrictions to be detrimental to respondents and to operate to the unlawful benefit of appellants.

Judgment affirmed.

McComb, J., and Fox, J., concurred.