[Civ. No. 31791.   Second Dist., Div. Five.   Sept. 24, 1968.]

DONN MULLALLY et al., Plaintiffs and Respondents, v. OJAI HOTEL COMPANY, Defendant and Appellant.

William B. Murrish and Charles W. Adams for Defendant and Appellant.

Johnston, Lucking & Hitch, Johnston, Lucking & Bertelsen, William A. Lucking, Jr., and Karl H. Bertelsen for Plaintiffs and Respondents.

KAUS, P. J.—The several plaintiffs own lots in a subdivision which juts, peninsula fashion, into the real property of the defendant Ojai Hotel Company. On that property defendant operates a hotel, the Ojai Valley Inn. The inn is surrounded by a golf course.

Defendant became the owner of several lots in the subdivision. The lots adjoined the hotel property. Defendant caused the lots to be annexed to the City of Ojai on condition that it grant defendant a conditional use permit. The planning commission of the City of Ojai then permitted defendant to establish tennis courts on two of the lots in question. It was defendant's intention to operate the tennis courts as an integral part of its hotel business.

The problem was that the subdivision was subject to a covenant which restricted the use of the lots to single family residences. When plaintiffs learned that defendant had actually started construction of the tennis courts they sued to enjoin it from violating the restrictions.

On the remaining lots in the subdivision owned by defendant, there is located a private residence which the manager of the inn uses as his home. On occasion rooms in that residence were rented to hotel guests. These facts were learned by plaintiffs shortly before the trial and they were permitted to amend their complaint to pray for an injunction against the use of the residence by hotel guests.

After a fairly lengthy trial the court granted judgment as prayed. Defendant appeals. In this court defendant concedes that as far as the injunction against the establishment of tennis courts is concerned, the judgment is supported by substantial evidence. It argues, however, that section 731a of the Code of Civil Procedure forbids the use of the injunctive process against a land use permitted by city zoning. Defendant also claims that the record discloses that the trial court really wanted to grant a "limited" injunction, allowing the establishment of tennis courts with certain protective conditions, but that the court erroneously thought it had no power to do so. With respect to the injunction against the use of the manager's home for hotel guests it is claimed that, such use being merely incidental and occasional, applicable case law militates against the court's judgment.

We disagree with defendant on all three points. While defendant makes an ingenious argument, based on certain canons of statutory construction, in support of its interpretation of section 731a[1] of the Code of Civil Procedure, we think that it is perfectly clear that the entire intent of the section is to prevent certain nuisance actions permitted by the courts before the section was enacted in 1935 and not to abolish enforcement of equitable restrictions by injunction, provided the landowner is able to lobby a zoning change through City Hall. The Supreme Court explained the purpose of section 731a in *Gelfand* v. *O'Haver*, 33 Cal.2d 218, 220 [200 P.2d 790] : "Prior to the addition of that section to the Code of Civil Procedure in 1935, the law was settled that a person could enjoin certain conduct as a nuisance even though the business was conducted in a district zoned to permit business of the type of which complaint was made and defendant was making an effort to operate his business in a careful and efficient manner. [Citations omitted.] In the light of that rule the manifest purport of the adoption of section 731a was to eliminate injunctive relief where the business is operated in its appropriate zone and the only showing is an injury and nuisance to the plaintiff in such operation. He must now show more, namely, that the defendant employed 'unnecessary and injurious methods' in the operation of the business. . . ."

---

[1] "Whenever any city, city and county, or county shall have established zones or districts under authority of law wherein certain manufacturing or commercial or airport uses are expressly permitted, except in an action to abate a public nuisance brought in the name of the people of the State of California, no person or persons, firm or corporation shall be enjoined or restrained by the injunctive process from the reasonable and necessary

There is no need to engage in the "thrust and parry"[2] of matching maxims of statutory interpretation. We simply cannot get ourselves to believe that, had the Legislature intended to abolish the rule that a land use, violative of restrictions, may be enjoined even though zoning permits it (*Rice* v. *Heggy*, 158 Cal.App.2d 89, 92 [322 P.2d 53]), clearer language would not have been found, nor would it have been necessary to sandwich the new section into the code, as section 731a, right after section 731, which pertains to nuisance actions in general.

Further, it is evident that to leave property owners to an action in damages would, in many cases, deprive them of any effective remedy whatsoever. It is a matter of common knowledge that restrictive covenants quite frequently forbid land uses which, if permitted, would make the property far more valuable. (Cf. *Wolff* v. *Fallon*, 44 Cal.2d 695, 697-698 [283 P.2d 802].)

At the oral argument below defendant had urged that the court allow the tennis courts to be built, but subject to certain restrictions with respect to their use. After the matter had been submitted the court delivered an oral opinion from the bench. At the end of the opinion the court said: "I toyed with the idea of equitable plan of letting the inn violate the restrictions providing that it would do it in a certain controlled and protective manner such as with no lights, no night use, trees and shrubs as a sound and sight barrier, et cetera, and some similar kind of controlled use of the Hill House. I abandoned that when I read the case of *Cooper* v. *Kovan* [349 Mich. 520] 84 Northwestern 2d, 859, a Michigan case." The court then analyzed *Cooper* v. *Kovan* as we shall do shortly. Having done so the court concluded as follows: "So, this deters me from trying to work out any controlled variation from the restrictions and I feel bound to hold that the restrictions must be upheld; that the plaintiffs would be entitled to the judgment. For this reason, Mr. Lucking is the one designated to prepare findings of fact, conclusions of law. I will add this, and now that the inn knows what it faces from

operation in any such industrial or commercial zone or airport of any use expressly permitted therein, nor shall such use be deemed a nuisance without evidence of the employment of unnecessary and injurious methods of operation. Nothing in this act shall be deemed to apply to the regulation and working hours of canneries, fertilizing plants, refineries and other similar establishments whose operation produce offensive odors." (Code Civ. Proc., § 731a.)

[2] The metaphor is Professor Llewellyn's. (Llewellyn, *Remarks On The Theory Of Appellate Decision And The Rules Or Canons About How Statutes Are To Be Construed*, 3 Vand. L.Rev. 394, 401.)

the trial court level, recognizing that I wouldn't have any equity power to make any conditional arrangement, if there is any desire, intention of the parties to try to work out something to forestall an appeal or to benefit the inn to some extent despite the victory, I would be willing to try to help out.''

In *Cooper* v. *Kovan* the trial court had permitted the defendant to use an area, restricted to residential uses, for parking and shopping center purposes, provided that a green belt, 130 feet wide, was maintained between the proposed parking lot and the plaintiffs' residences.[3] The decree was reversed. The appellate court characterized the trial court's action as effecting ''a compromise'' and engaging in ''city planning.'' It then listed the equitable considerations which, in Michigan, permit restrictions to be invalidated and found that none of them applied. It therefore reversed. The following language appears in the opinion: ''. . . Desirable as such a plan may be in general city planning terms, we must answer the question here as to whether the circuit judge sitting in equity *had power* to effect such a compromise in the face of and at the expense of existing and valid residential restrictions, or whether such planning must be left to planning boards and private developers.'' (*Ibid.,* p. 864. Italics added.)

It is quite evident to us that what the trial court in the case at bar meant was that if it did issue what defendant calls a ''limited injunction,'' it would not be acting as a court but as a city planner or arbitrator. There is nothing to show that the trial court was unaware that, in a proper case, it had the power to give plaintiffs less than the whole loaf.

There was evidence that, from time to time, when the hotel was full, the manager's residence had been used for paying hotel guests. This happened only sporadically, particularly when there were conventions at the inn. The guests were served continental breakfasts in their rooms.

The trial court found as follows: ''The use of the residence house on Lots 10 and 12 for paying guests of the resort hotel is considerably different from such use by full-time residents, in that patrons of a resort hotel would have a tendency to go to bed later, to be more free and easy in their activities and in the amount of noise made, in the exuberance displayed, and would not be in harmony with the habits of full-time residents.''

---

[3]According to the Michigan Supreme Court this decision had ''the peculiar merit of having left both sides completely dissatisfied, resulting in plaintiffs' appeal and defendants' cross-appeal.''

Defendant cites a number of cases for the proposition that such sporadic commercial use of a private residence is not a violation of restrictions similar to the one to which its lots were subject. Principally the cases involve holdings to the effect that the incidental keeping of boarders does not make a private residence a boarding house. (*Robbins* v. *Bangor Ry. etc. Co.*, 100 Me. 496 [62 A. 136, 1 L.R.A. N.S. 963] ; *Trainor* v. *LeBeck*, 101 N.J.Eq. 823 [139 A. 16] ; *Southampton Civic Club* v. *Couch*, 159 Tex. 464 [322 S.W.2d 516] ; *Cook* v. *Papa*, 18 Misc.2d 871 [181 N.Y.S.2d 938].) None of them involve two factors present in the case at bar: 1. that the rooms, when occupied by paying guests, were used as an integral part of a hotel operation; and 2. that by their nature the guests—conventioneers—behave in a manner more obnoxious to the purpose of the restriction than they would were the rooms their permanent home.

The judgment is affirmed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

A petition for a rehearing was denied October 10, 1968, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1968.

---

*Assigned by the Chairman of the Judicial Council.