[Civ. No. 38906. Second Dist., Div. Two. Mar. 15, 1972.]

LEON E. SEATON et al., Plaintiffs and Respondents, v.
MARJORIE E. CLIFFORD et al., Defendants and Appellants.

## COUNSEL

George B. Prentice for Defendants and Appellants.

Fourt & Schechter and Walter J. Fourt for Plaintiffs and Respondents.

## OPINION

**COMPTON, J.**—In an action filed January 22, 1971, plaintiffs sought an injunction and declaratory relief for the enforcement of certain restrictions and protective covenants applicable to a tract housing development known as Montalvo Heights in Ventura County. Plaintiffs are homeowners in the tract.

The thrust of the restrictions sought to be enforced was that the tract be limited to single family dwellings for residential use.

It was alleged that defendants in violation of said restrictions were maintaining, in a house in the tract, a business establishment in the nature of a facility for the care of the mentally retarded. Defendant Marjorie Clifford is the owner of the property; defendant Kathryn Runyan merely assisted Clifford in the enterprise and all further references are to defendant Clifford.

On May 21, 1971, the superior court granted an order for summary

judgment and permanently enjoined defendants from "[o]perating any business or commercial establishment or any facility for the care of the mentally retarded, mentally disordered or otherwise handicapped persons, . . ." on the property in question. Defendants appeal.

In her declaration in opposition to summary judgment defendant Clifford admitted operating a home for the mentally retarded: ". . . I operate a home for mentally retarded male persons at 6902 Norton Drive, Montalvo, Ventura, California; . . . I have no more than six (6) such persons in the said home *at any given time*; . . . I do receive a certain financial consideration for the residence of the said persons on my said property . . . what I am operating is in essence a small boarding house. I am licensed by the State of California to have a home for the mentally retarded at the said [address]. . . . [W]hen I purchased said property, I was not aware of . . . the wording in the . . . Declaration of Restrictions. . . ." (Italics added.)

Defendant is fourth in the chain of title to the property beginning with the subdividers Ramelli & Associates. In 1955 the latter recorded a document entitled, "Reservations, Restrictions and Protective Covenants" applicable to Montalvo Heights Unit #4, Ventura County, California. Subsequent deeds to the individual parcel in question carried reference to the restrictions which insofar as is germane to this case provide, "That all of the lots in said tract are restricted to residential purposes." The restrictive document further recited that these "conditions shall operate as a covenant running with the land."

The deed by which defendant Clifford obtained title from her immediate predecessor made no reference to the said restrictions.

Defendant's contentions on appeal are (1) she was not bound by the restrictions because of the lack of reference thereto in her deed, (2) her conduct did not violate the restrictions, and (3) the restrictions are unenforceable as being contrary to the public policy and statutory law of the State of California.

We have concluded that none of defendant's contentions have merit.

■ First, the lack of reference to the restrictions in the deed did not, as defendant contends, serve to extinguish those restrictions. Defendant's reliance on *Murry* v. *Lovell,* 132 Cal.App.2d 30 [281 P.2d 316], is misplaced. In that case the original subdividers, after recording the declaration of restrictive covenants, failed to include reference to such declaration in the first conveyances which severed title to the parcels. There the court held that because of such failure the equitable servitudes were never

created. The following language from *Werner* v. *Graham,* 181 Cal. 174, 183-184 [183 P. 945], is controlling here: "It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. . . . In such a case the mutual servitudes spring into existence as between the *first parcel conveyed and the balance of the parcels at the time of the first conveyance.* As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. . . ." (Italics added.)

The first conveyance from the subdividers Ramelli & Associates to the first grantee predecessors of defendant Clifford clearly recited that it was "Subject to: (1) Covenants, conditions, restrictions and easements of record." Thus, following the rule of *Werner,* the servitudes came into existence and were not subject to being extinguished by failure to include a similar clause in the subsequent deeds. The recorded document of restrictions was adequate notice to future grantees including defendant here.

■ In determining whether the defendant's activity violated the restrictions, the trial court had available to it, in addition to the declaration mentioned above, defendant Clifford's deposition. In that deposition she admitted that she received $1,392 per month as compensation for the care of six handicapped individuals. Each of the said individuals received $232 per month from the State of California under the Aid to Totally Disabled program. This money was in turn paid to defendant Clifford. Clifford had two paid employees who were covered by Workmen's Compensation Insurance.

It can hardly be contended that the license, employees and income are other than the indicia of a business enterprise. Clearly the defendant's activity violated the restriction that the property be used only for residential purposes.

"[T]he primary object in construing restrictive covenants, as in construing all contracts, should be to effectuate the legitimate desires of the covenanting parties." (*Hannula* v. *Hacienda Homes,* 34 Cal.2d 442, 444-445 [211 P.2d 302, 19 A.L.R.2d 1268].)

Each of the plaintiffs here declared that they purchased their homes in

reliance on the restrictions and were keenly desirous of maintaining the residential character of the area. This is a laudable and understandable desire.

Without delineating the complete dimensions of the phrase "residential purposes" it is certain that in this context "business" is the antonym of "residential."

■ Said another way the maintenance of a commercial "boarding house," to use defendant's own terminology, which in essence is providing "residence" to paying customers, is not synonymous with "residential purposes" as that latter phrase is commonly interpreted in reference to property use. In this regard, except for size, we see little distinction between defendant's business and that of a motel, inn, rest home or any of a myriad of other types of establishments where shelter is the essential commodity being marketed.

Not an insignificant factor in placing defendant's business outside the ambit of "residential purposes" is the apparent transient nature of her clientele. We infer from her declaration that she has "no more than six . . . persons . . . *at any given time*" on the premises, that the "residents" of her establishment are a changing group.

■ Lastly, defendant directs our attention to Welfare and Institutions Code sections 5115 and 5116.

Section 5115 reads in pertinent part: "(b) In order to achieve uniform statewide implementation of the policies of this act and those of the Lanterman Mental Retardation Act of 1969, it is necessary to establish the statewide policy that the use of property for the care of six or fewer mentally disordered or otherwise handicapped persons is a residential use of such property for the purposes of zoning."

Section 5116 reads in pertinent part: "Pursuant to the policy stated in Section 5115, a state-authorized, certified, or licensed family care, foster home, or group home serving six or fewer mentally disordered or otherwise handicapped persons, shall be considered a residential use of property for the purposes of zoning."

Defendant argues that since the State of California "accepts a responsibility for its mentally retarded citizens and an obligation to them which it must discharge" (Health & Saf. Code, § 38001) (1) the Legislature intended Welfare and Institutions Code section 5115 and 5116 to apply to deed restrictions as well as zoning, and (2) the enforcement of the

restrictions is contrary to public policy citing *Burkhardt* v. *Lofton,* 63 Cal.App.2d 230 [146 P.2d 720] (dealing with restrictions on race).

She suggests that unless sections 5115 and 5116 are permitted to override the restrictions, people in all residential tracts could jointly agree to restrictions that would make it impossible for a mentally retarded home to operate anywhere in the state. That may well be, but the solution to such an eventuality lies in the state's exercise of the power of eminent domain to provide the necessary facilities for the mentally retarded. In that way private property rights would not be impaired without just compensation.

In an unbroken line of cases, California courts have held that a change in the zoning restrictions in an area does not impair the enforceability of existing deed restrictions. (See *Wilkman* v. *Banks,* 124 Cal.App.2d 451 [269 P.2d 33]; *Mullally* v. *Ojai Hotel Co.,* 266 Cal.App.2d 9 [71 Cal.Rptr. 882].)

In other words, while re-zoning makes possible a change in the character of an area, it cannot in and of itself create the change.

Here there has been no zone change. The zone remains residential. The state, for zoning purposes, has decreed that a home for the care of six or less persons is within the definition of residential zoning. The principle is the same, however. While Welfare and Institutions Code sections 5115 and 5116 may operate as a shield to the operator of such a facility as against the attempted enforcement of its zoning regulations by a municipality, such an artificial and arbitrary attempt by the state at redefinition of terms cannot impair private contractual and property rights. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 16.)

The enforcement of the restrictions here does not violate public policy nor does it unconstitutionally discriminate against any group of persons. The restrictions are not aimed at the mentally retarded they are aimed at the commercial aspects of defendant's activity. This enforcement does nothing more than satisfy the reasonable expectancy of the other homeowners that the residential character of the neighborhood will be preserved.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.