Opinion
 

 PUGLIA, P. J.
 

 Defendant Butte Home Health, Inc. (defendant) appeals from a judgment permanently enjoining its operation of a nonprofit group home for the disabled elderly in a residential neighborhood in Chico. The trial court granted the injunction to neighboring homeowners (plaintiffs) on the ground the operation of a group home was in violation of a restrictive covenant limiting the use of the property to a “private residence.” The trial court was aware of 1993 amendments to Government Code sections 12955 and 12955.6 forbidding discrimination through the enforcement of restrictive covenants prohibiting group homes for the disabled. The court declined to apply the amendments, however, concluding their retroactive application to preexisting restrictive covenants would be an unconstitutional impairment of contract.
 

 As we explain, a finding that an exercise of the state’s police power impairs a contract “is the beginning, not the end of the analysis.”
 
 (City of Torrance
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1982) 32 Cal.3d 371, 377 [185 Cal.Rptr. 645, 650 P.2d 1162]
 
 (City of Torrance).)
 
 An impairment exceeds constitutional bounds only if it is substantial.
 
 (Allied Structural Steel Co.
 
 v.
 
 Spannaus
 
 (1978) 438 U.S. 234, 240 [98 S.Ct. 2716, 2719-2720, 57 L.Ed.2d 727]
 
 (Allied); City of Torrance, supra,
 
 32 Cal.3d at p. 377.) Clearly, the infringement on their property rights is significant to plaintiffs. However, the record discloses the effect on plaintiffs’ property rights of the operation of
 
 *312
 
 the group home is de minimis. Moreover, both state and federal legislatures have found a compelling governmental interest in providing adequate housing for the disabled, and thus their right to adequate housing outweighs the interest of plaintiffs in remaining free of insubstantial interferences with their property rights. Accordingly, we shall reverse and remand with directions to die trial court to enter judgment for defendant.
 

 The facts are stipulated. Defendant is a California nonprofit, public benefit corporation qualified as a charitable corporation under the Internal Revenue Code. Defendant owns a single-family home at 2377 Pamela Way in Chico (the Pamela Way home), located in a subdivision known as Shirley Park. All lots in the Shirley Park subdivision are subject to mutually restrictive covenants, recorded in 1960 and amended in 1963, governing uses of the property. As relevant here, these covenants provide:
 

 “1. Land Use and Building Type
 

 “No buildings other than one detached new single-family private residence . . . shall be erected or maintained on any of said property. ... No use whatsoever except in connection with its use and improvement as the site and grounds of a private residence, shall be made of any part, parcel or portion therein. The term ‘private residence’ is intended to exclude every form of multi-family dwelling, boarding or lodging house, sanitarium, hospital, resthome and the like, guest house or servant’s quarters.
 

 “10. Commercial Activities
 

 “No commercial or manufacturing activities of any nature, description or kind shall be permitted on said property, or any part thereof. . . .”
 

 In May 1995, defendant began operating a residential care facility for the elderly disabled at the Pamela Way home. The residents of the facility are persons who, because of age and various disabilities, cannot care for themselves. The facility is licensed by the California Department of Social Services, which has authorized defendant to provide a residential care facility in the Pamela Way home.
 

 The Pamela Way home is maintained in such a manner as to be visually consistent with the single-family character of the Shirley Park subdivision. No commercial activities take place at the home and no signs or billboards announce its presence. Indeed, there is nothing in the record to suggest the
 
 *313
 
 Pamela Way home can be distinguished from any of the other homes in the neighborhood.
 

 Before defendant began operating the Pamela Way home as a residential care facility, plaintiffs notified defendant the proposed facility would violate the restrictive covenants in Shirley Park. When defendant proceeded with its plans to open the facility, plaintiffs brought this action for injunctive and declaratory relief.
 

 Following trial, the superior court entered judgment enjoining defendant from operating a residential care facility at the Pamela Way home or using the property for any purpose other than as a “private residence.” The court acknowledged recent amendments to Government Code sections 12955 and 12955.6 forbid the enforcement of restrictive covenants that have the effect of prohibiting the operation of a group home for the disabled in a residential subdivision. Nonetheless, the trial court concluded these provisions could not be applied retroactively to invalidate preexisting restrictive covenants. The court felt impelled to this conclusion by the fact restrictive covenants create property rights which, pursuant to the federal and state Constitutions, may not be impaired.
 

 I
 

 On appeal, plaintiffs argue that the trial court’s refusal to apply Government Code sections 12955 and 12955.6 retroactively is compelled by this court’s decision in
 
 Barrett
 
 v.
 
 Lipscomb
 
 (1987) 194 Cal.App.3d 1524 [240 Cal.Rptr. 336] (Barrett) and by
 
 Seaton
 
 v.
 
 Clifford
 
 (1972) 24 Cal.App.3d 46 [100 Cal.Rptr. 779].
 

 Health and Safety Code section 1569.87, enacted in 1985 (as section 1569.67) (Stats. 1985, ch. 1127, § 3, p. 3826; Stats. 1986, ch. 844, § 11, p. 2891) as part of the California Residential Care Facilities for the Elderly Act (Health & Saf. Code, § 1569 et seq.), provides: “For the purposes of any contract, deed, or covenant for the transfer of real property executed on or after January 1, 1979, a residential facility for the elderly which serves six or fewer persons shall be considered a residential use of property and a use of property by a single family, notwithstanding any disclaimers to the contrary.”
 

 Health and Safety Code section 1569.2, subdivision (k) defines a “ ‘[residential care facility for the elderly’ ” in part as “a housing arrangement chosen voluntarily by persons 60 years of age or over, or their authorized representative, where varying levels and intensities of care and supervision,
 
 *314
 
 protective supervision, or personal care are provided, based upon their varying needs, as determined in order to be admitted and to remain in the facility.” “ ‘Care and supervision’ means the facility assumes responsibility for, or provides or promises to provide in the future, ongoing assistance with activities of daily living without which the resident’s physical health, mental health, safety or welfare would be endangered. ...” (Health & Saf. Code § 1569.2, subd. (b).)
 

 In
 
 Barrett, supra,
 
 194 Cal.App.3d 1524, this court considered Health and Safety Code section 1566.5, which was enacted in 1978 as part of the California Community Care Facilities Act. (Health & Saf. Code, § 1500 et seq.) Section 1566.5 imposes a condition identical to that in Health and Safety Code section 1569.87 for the benefit of a residential facility, defined as a family home or group care facility for the 24-hour nonmedical care of persons in need of such care for their protection or to sustain the activities of daily living. (Health & Saf. Code, § 1502, subd. (a)(1).) Prior to the 1985 enactment of Health and Safety Code section 1569.87, section 1566.5 applied, inter alia, to residential facilities for the elderly. Section 1566.5 provides: “For the purposes of any contract, deed, or covenant for the transfer of real property executed on or after January 1, 1979, a residential facility which serves six or fewer persons shall be considered a residential use of property and a use of property by a single family, notwithstanding any disclaimers to the contrary.”
 
 [1]
 
 As with Health and Safety Code section 1569.87, Health and Safety Code section 1566.5 expressly applies only to restrictive covenants “executed on or after January 1, 1979.”
 

 In
 
 Barrett,
 
 we held Health and Safety Code section 1566.5 does not invalidate preexisting covenants prohibiting the operation of residential care facilities for the elderly. (194 Cal.App.3d at pp. 1530-1533.) We explained that the plain language of Health and Safety Code section 1566.5 evinces a legislative intention to exclude covenants “ ‘executed on or after January, 1979 ’ ” (194 Cal.App.3d at pp. 1530.) Thus, under Health and Safety Code section 1566.5, interpreted in
 
 Barrett,
 
 and Health and Safety Code section 1569.87, which for present purposes is indistinguishable from Health and Safety Code section 1566.5, the 1963 Shirley Park covenants prohibiting the use contemplated by defendant are valid and enforceable.
 

 
 *315
 
 In 1993, the Legislature amended Government Code sections 12955 and 12955.6 (hereafter the 1993 amendments), which are part of the California Fair Employment and Housing Act. Government Code section 12955 was amended to provide: “It shall be unlawful. . . [¶] . . . [¶]
 
 (l)
 
 To discriminate through public or private land use practices, decisions, and authorizations because of race, color, religion, sex, familial status, marital status,
 
 disability,
 
 national origin, or ancestry. Discrimination includes, but is not limited to, restrictive covenants. . . .” (Italics added.) Government Code section 12955.6, was amended to provide: “Any state law that purports to require or permit any action that would be an unlawful practice under this part shall to that extent be invalid.” (Stats. 1993, ch. 1277, § 5.5.)
 

 In amending the Fair Employment and Housing Act, the Legislature declared: “It is the Legislature’s intent to make the following findings and declarations regarding unlawful housing practices prohibited by this act: (a) That public and private land use practices, decisions, and authorizations have restricted, in residentially zoned areas, the establishment and operation of group housing ....[¶] (b) That persons with disabilities ... are significantly more likely than other persons to live with unrelated persons in group housing. [¶] (c) That this act covers unlawful discriminatory restrictions against group housing for these persons.” (Stats. 1993, ch. 1277, § 18.)
 

 The 1993 amendments relate to discrimination on the basis of
 
 disability,
 
 not age. However, defendant’s Pamela Way home houses elderly individuals who come within the Government Code definition of “disabled.” Government Code section 12955.3 defines “disability” as, inter alia, “A physical or mental impairment that substantially limits one or more of a person’s major life activities.” The parties stipulated in the trial court that the elderly clients of the Pamela Way home “are persons who, because of their age and disability, cannot care for themselves.” Plaintiffs further conceded defendant’s facility “is the type of care facility that [is] governed by the [1993 amendments].” Accordingly, the Pamela Way home is one “intended to provide for persons with disabilities.” (Cf.
 
 Broadmoor San Clemente Homeowners Assn.
 
 v.
 
 Nelson
 
 (1994) 25 Cal.App.4th 1, 6 [30 Cal.Rptr.2d 316]
 
 (Broadmoor).)
 

 Broadmoor
 
 involved an action by a homeowners association seeking to enjoin the operation of a residential care facility for nonambulatory elderly adults, based on a restrictive covenant recorded in 1974.
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at p. 3.) The
 
 Broadmoor
 
 court first held defendant’s residential care facility for the elderly qualified also as a home for persons with disabilities within the meaning of Government Code section 12955.3.
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at p. 6.) The court was then faced with
 
 *316
 
 the question whether the 1993 amendments were intended to abrogate the exemption for preexisting covenants in Health and Safety Code section 1569.87. The court concluded such was the intent. “Health and Safety Code section 1569.87, on its face, and as interpreted by Barrett. . . with respect to pre-1979 covenants, purports to permit restrictive covenants to exclude group homes for elderly persons with disabilities. The expressed legislative intent indicates this is the type of discrimination which Government Code section 12955 intended to make unlawful. Therefore, the exclusion for pre-1979 covenants contained in section 1569.87 has been invalidated by Government Code section 12955.6.”
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at p. 6.)
 

 In reaching this conclusion,
 
 Broadmoor
 
 analyzed in detail the legislative history of the 1993 amendments.
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at pp. 7-8.) The court also noted one reason for the legislative change was to bring California law into conformity with the federal Fair Housing Act of 1968, which precludes the enforcement of restrictive covenants, even those neutral on their face, that have the purpose of discriminating, in housing, against handicapped individuals.
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at pp. 7-9; see e.g., 42 U.S.C. § 3604(f)(1), (f)(3)(B).)
 
 [2]
 

 The
 
 Broadmoor
 
 court concluded: “It was the clear intent of the Legislature in enacting the 1993 amendments to Government Code sections 12955 and 12955.6 to bring California housing legislation in full compliance with federal law. Federal law prohibits enforcement of a restrictive covenant which has the effect of excluding group homes for the handicapped. The legislative intent expressed as part of the amendments, specifically refers to
 
 *317
 
 the desirability of making group housing for the disabled available in residential areas. (Stats. 1993, ch. 1277, § 18.) Accordingly, the portion of Government Code section 12955.6 invalidating ‘[a]ny state law that purports to . . . permit any action that would be an unlawful practice under this part’ . . .
 
 was intended to and did invalidate the portion of Health and Safety Code section 1569.87 which permitted the use ofpre-1979 restrictive covenants to be employed to exclude group homes for the disabled
 
 elderly.”
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at p. 9, italics added.)
 

 Plaintiffs do not claim
 
 Broadmoor
 
 was wrongly decided, i.e., they do not dispute
 
 Broadmoor's
 
 conclusion the 1993 amendments were intended to invalidate all restrictive covenants, regardless of the date such covenants were created, which purport to prohibit group homes for the disabled. Furthermore, plaintiffs acknowledge that if the 1993 amendments are constitutional as applied to preexisting covenants, they will prevent those covenants from being enforced to prohibit defendant’s nonconforming use.
 

 Thus, the operative issue is as set forth in defendant’s opening brief: “Are civil rights statutes that forbid the use of private restrictive covenants to keep residential care facilities for the [disabled] from locating in residential neighborhoods constitutional, as applied to covenants that predate the statutes?”
 

 Plaintiffs argue that retroactive application of the 1993 amendments to abrogate restrictive covenants entered into in 1963 would result in an unconstitutional impairment of contract. Plaintiffs argue further that this court in
 
 Barrett, supra,
 
 194 Cal.App.3d 1524, made a “dispositive” determination that neither Congress nor the California Legislature constitutionally may bar enforcement of preexisting restrictive covenants.
 

 Barrett
 
 dealt with Health and Safety Code section 1566.5, a provision that, by its terms, does not purport to affect the enforceability of preexisting restrictive covenants. Accordingly, this court had no occasion to consider whether application of Health and Safety Code section 1566.5 retroactively would run afoul of the contract clauses of the state and federal Constitutions.
 
 (Barrett, supra,
 
 194 Cal.App.3d at pp. 1531-1533.) Indeed, we observed in
 
 Barrett
 
 that “[construing [Health and Safety Code] section 1566.5 to be prospective only in application . . . avoids the constitutional challenge of impairment of vested contractual rights . . . .”
 
 (Barrett, supra,
 
 194 Cal.App.3d at p. 1532.)
 

 Nor was the issue fully determined in
 
 Seaton
 
 v.
 
 Clifford, supra,
 
 24 Cal.App.3d 46. At issue in
 
 Seaton
 
 was a statute relating to mentally disordered or otherwise handicapped persons. Welfare and Institutions Code
 
 *318
 
 section 5115 declares the policy of the state to be that these persons are entitled to live in normal residential surroundings. To effectuate that purpose, Welfare and Institutions Code section 5116 provides that homes “serving six or fewer mentally disordered or otherwise handicapped persons . . . shall be considered a residential use of property for the purposes of zoning . . . .” Responding to an assertion by operators of residential care facilities that the statute rendered unenforceable restrictive covenants limiting use to single-family dwellings, the
 
 Seaton
 
 court held the statute did no more than effectuate a change of zoning, and “a change in the zoning restrictions in an area does not impair the enforceability of existing deed restrictions.”
 
 (Seaton, supra,
 
 24 Cal.App.3d at p. 52.) It was only in dicta that the
 
 Seaton
 
 court observed that any attempt by the state to redefine the terms of a preexisting restrictive covenant would run afoul of the state and federal constitutional contract clauses.
 
 (Seaton, supra,
 
 24 Cal.App.3d at p. 52.) We disagree with plaintiffs that
 
 Barrett
 
 and
 
 Seaton
 
 are dispositive of the constitutional issue presented here.
 
 [3]
 

 II
 

 Article I, section 10 of the United States Constitution states in relevant part: “No State shall . . . pass any . . . law impairing the obligation of contracts.” The California Constitution has an almost identical provision in article I, section 9: “A . . . law impairing the obligation of contracts may not be passed.”
 

 The language of these constitutional provisions “appears unambiguously absolute . . . .”
 
 (Allied, supra,
 
 438 U.S. 234, 240 [98 S.Ct. 2716, 2719-2720, 57 L.Ed.2d 727, 733.) However, the provisions have not been so treated by the courts. “Read literally, these provisions appear to proscribe any impairment. However, it has long been settled that the proscription is ‘not an absolute one and is not to be read with literal exactness like a mathematical formula.’ [Citation.]”
 
 (City of Torrance, supra,
 
 32 Cal.3d at p. 377.)
 

 “[I]t is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. ‘It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general
 
 *319
 
 good of the public, though contracts previously entered into between individuals may thereby be affected . , . [Citation.] As Mr. Justice Holmes succinctly [stated] . . . ‘One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.’ ”
 
 (Allied, supra,
 
 438 U.S. at pp. 241-242 [98 S.Ct. at p. 2721, 57 L.Ed.2d at p. 734]; see, e.g.,
 
 Shelley
 
 v.
 
 Kraemer
 
 (1948) 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441].)
 

 Accordingly, “. . . a finding that the state in the exercise of its police power has abridged an existing contractual relationship does not in and of itself establish a violation of the contract clause. It is the beginning, not the end of the analysis. A finding of impairment merely moves the inquiry to the next and more difficult question—whether that impairment exceeds constitutional bounds.”
 
 (City of Torrance, supra,
 
 32 Cal.3d at p. 377.)
 

 The initial step in analyzing a claim of unconstitutional impairment of contract is to examine whether the statute in fact operates as a
 
 substantial
 
 impairment of a contractual relationship.
 
 (Allied, supra,
 
 438 U.S. at p. 244 [98 S.Ct. at p. 2722, 57 L.Ed.2d at p. 736].) “The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation.”
 
 (Allied, supra,
 
 at p. 245 [98 S.Ct. at pp. 2722-2723, 57 L.Ed.2d at pp. 736-737], fn. omitted; see also
 
 In re LaFortune
 
 (9th Cir. 1981) 652 F.2d 842, 846 [“If only minor alterations of contractual obligations are present, then the inquiry ends as no constitutional violation has occurred.”].) The analysis is substantially the same under the California Constitution. (See, e.g.,
 
 City of Torrance, supra,
 
 32 Cal.3d at pp. 374-378;
 
 In re Marriage of Potter
 
 (1986) 179 Cal.App.3d 73, 82-84 [224 Cal.Rptr. 312];
 
 Interstate Marina Development Co.
 
 v.
 
 County of Los Angeles
 
 (1984) 155 Cal.App.3d 435, 445-446 [202 Cal.Rptr. 377].)
 

 Plaintiffs argue the 1993 amendments substantially impair contractual arrangements which have been judicially recognized as legitimate and beneficial to society. Plaintiffs note restrictive covenants create property rights compensable in an eminent domain action.
 
 (Redevelopment Agency
 
 v.
 
 Tobriner
 
 (1984) 153 Cal.App.3d 367, 375 [200 Cal.Rptr. 364].) Plaintiffs claim retroactive application of the 1993 amendments to preexisting restrictive covenants defeats the reasonable expectations of the parties to such covenants.
 

 Defendant does not dismiss plaintiffs’ arguments as meritless. As defendant notes, however, the issue presented is not whether restrictive covenants,
 
 *320
 
 in general, are a legitimate and socially valuable means by which property owners may protect the character of their neighborhoods. The issue is whether the 1993 amendments effect a substantial impairment of plaintiffs contract rights such as to run afoul of the state and federal Constitutions.
 

 The record is devoid of evidence that plaintiffs have suffered anything more than a minimal alteration of what is assuredly a long-standing, beneficial property right. The stipulated facts fail to show that suspension of the Shirley Park restrictive covenants to accommodate defendant’s six-person residential care facility has had any discernible impact on plaintiffs’ property rights. No manufacturing or sales occur at the facility, and no signs or billboards announce the facility’s presence. The home is maintained in a manner visually consistent with the single-family character of the subdivision. There is no evidence the operation of the facility has had any effect on property values in the area, nor is there any evidence the quality of life in the Shirley Park subdivision has been degraded by the presence of defendant’s group home. Plaintiffs have not established defendant’s facility involves any more burdensome use of the land than would be the case if a single family were living in the residence. In fact, the number of residents in the Pamela Way home, limited to no more than six, could well be less than that in a “traditional” single-family residence not subject to a maximum number. (Cf.
 
 McCaffrey
 
 v.
 
 Preston
 
 (1984) 154 Cal.App.3d 422, 433 [201 Cal.Rptr. 252].)
 

 More importantly, “[t]he obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them . . . .”
 
 (Home Building. & Loan Assn.
 
 v.
 
 Blaisdell
 
 (1934) 290 U.S. 398, 431 [54 S.Ct. 231, 237, 78 L.Ed. 413, 88 A.L.R. 1481], fn. omitted.) The 1993 amendments neither extinguish nor render invalid the Shirley Park restrictive covenants. The 1993 amendments prohibit enforcement of the Shirley Park restrictive covenants only to the extent such covenants have the effect of excluding the disabled and other classes of persons protected by the civil rights laws. The 1993 amendments do not prevent enforcement of the restrictive covenants to prohibit the operation of any other type of commercial establishment nor do they forbid plaintiffs from excluding those types of facilities housing persons who are not members of the classes protected by the fair housing laws. (E.g., 42 U.S.C. § 3602(h) [excluding those whose sole impairment is drug addiction from the definition of the “handicapped”]; see Gov. Code, § 12955.3, subd. (b) [same].)
 

 Nor does it matter the Shirley Park covenants are “neutral” on their face, i.e., that they do not target group homes per se, but expressly restrict uses to single-family residences. (Cf.
 
 Shelley
 
 v.
 
 Kraemer, supra,
 
 334 U.S. 1 [68 S.Ct. 836, 92 L.Ed. 1161].) As we have noted, the 1993 amendments were
 
 *321
 
 designed to bring California into conformity with federal law. (See Gov. Code, § 12955.6 [“Nothing in this part shall be construed to afford to the classes protected under this part, fewer rights or remedies than the federal Fair Housing Amendments Act of 1988 . . . and its implementing regulations[.]”].) The federal Fair Housing Act “‘has been broadly applied’” to reach all practices, including facially neutral restrictive covenants, “ ‘which have the effect of interfering with the exercise of rights’ under the federal fair housing laws.’ ” (U.S. v.
 
 City of Hayward
 
 (9th Cir. 1994) 36 F.3d 832, 835 ;
 
 Martin
 
 v.
 
 Constance
 
 (E.D.Mo. 1994) 843 F.Supp. 1321, 1325-1326.) “Reference to the legislative history of the 1988 amendments to the [Fair Housing Act] confirms this conclusion. House Report No. 100-711, 100th Cong., 2d Sess. 24,
 
 reprinted in
 
 1988 U.S.C.A.N. 2173, 2184-85, states:
 

 “[[42 U.S.C.] Section 3604(f)(2)] is intended to prohibit restrictive covenants . . . which have the effect of excluding, for example, congregate living arrangements for persons with handicaps.
 

 “Another method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on . . . land use in a manner which discriminates against people with disabilities. . . . These and similar practices would be prohibited.”
 
 (Martin
 
 v.
 
 Constance, supra,
 
 843 F.Supp. at pp. 1325-1326; see also Gov. Code, § 12955.8, subd. (b);
 
 Broadmoor, supra,
 
 25 Cal.App.4th at pp. 7-8.)
 

 We are not without sympathy for plaintiffs’ concerns. However, there is by definition no
 
 legally
 
 “significant” or “substantial” impairment of contract effected by the 1993 amendments “since by legislative fiat [defendant’s residential care facility] is the same type of use as the entire neighborhood enjoys, i.e., a single-family residence. The character and intensity of use is no greater.”
 
 (McCaffrey
 
 v.
 
 Preston, supra,
 
 154 Cal.App.3d at p. 434.)
 

 in
 

 Assuming “the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation . . . such as the remedying of a broad and general social or economic problem. . . . [T]he public purpose need not be addressed to an emergency or temporary situation. . . . [*][] Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of ‘the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public
 
 *322
 
 purpose justifying [the legislation’s] adoption.’ [Citation.]”
 
 (Energy Reserves Group
 
 v.
 
 Kansas Power & Light
 
 (1983) 459 U.S. 400, 411-412 [103 S.Ct. 697, 704-705, 74 L.Ed.2d 569].) “ ‘[A]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.’”
 
 (Energy Reserves Group
 
 v.
 
 Kansas Power & Light, supra,
 
 459 U.S. at pp. 412-413 [103 S.Ct. at p. 705, 74 L.Ed.2d at p. 581].)
 

 Plaintiffs argue that rendering these restrictive covenants unenforceable in order to allow defendant to operate its group home is “not necessary to protect any broad societal interest.” The Legislature has declared otherwise, concluding there is a compelling governmental interest in ensuring that those classes of persons who fall within the protection of the civil rights laws have access to suitable and affordable housing. The Fair Employment and Housing Act states: “[T]he practice of discrimination because of . . . disability in housing accommodations is declared to be against public policy. [*]D It is the purpose of this part to provide effective remedies which will eliminate such discriminatory practices. HQ This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of this state.” (Gov. Code, § 12920.)
 

 A similar policy informs The federal Fair Housing Act: “The Fair Housing Amendments Act of 1988 articulates the public policy of the United States as being to encourage and support handicapped persons’ right to live in a group home in the community of their choice. [Citation.] ‘[Section 3604(f)(2)] is intended to prohibit special restrictive covenants . . . which have the effect of excluding . . . congregate living arrangements for persons with handicaps.’ ”
 
 (Rhodes
 
 v.
 
 Palmetto Pathway Homes, Inc.
 
 (1991) 303 S.C. 308 [400 S.E.2d 484, 486].)
 

 Finally, plaintiffs have not shown the 1993 amendments are not “ ‘appropriate to the public purpose justifying [the legislation’s] adoption.’ [Citation.]” (En
 
 ergy Reserves Group
 
 v.
 
 Kansas Power & Light, supra,
 
 459 U.S. at p. 412 [103 S.Ct. at p. 705, 74 L.Ed.2d at p. 581].) To the extent the 1993 amendments impair preexisting contractual rights, they do so only to the extent necessary to provide suitable housing for the disabled. “The selection of a maximum of six persons represents a legislative determination that this was the maximum number who could reside in a residential care facility and yet have that facility retain its homelike character and the neighborhood its single family residential character.”
 
 (McCaffrey
 
 v.
 
 Preston, supra,
 
 154 Cal.App.3d at p. 432.) Accordingly, the reach of the 1993 amendments is no greater than is necessary to ensure that the goal of securing housing for the
 
 *323
 
 disabled is not frustrated by private action. The legislation does not arbitrarily adjust the benefits and burdens of private contracts, but simply states that, to the extent private restrictive covenants have the effect of excluding suitable housing for the disabled, such covenants may not be enforced.
 

 IV
 

 Plaintiffs also claim the 1993 amendments are unconstitutional in depriving plaintiffs of property without due process of law. That issue was not raised in the trial court. In any event, plaintiffs concede the critical issue with regard to due process is “the same as that involved in connection with impairment of contract.” In light of our determination plaintiffs’ contract rights have not been substantially impaired, and that in any event there is a compelling state interest in providing suitable and affordable housing for the disabled, plaintiffs’ due process argument necessarily fails.
 

 V
 

 In its answer to the complaint, defendant requested an award of attorney fees incurred to defend the action. Defendant raises the attorney fee issue on appeal, requesting an award pursuant to Government Code section 12989.2, Code of Civil Procedure section 1021.5 and 42 United States Code section 3613(c)(2). The issue of whether, and in what amount, attorney fees should be awarded should be decided in the first instance by the trial court. Upon remand, defendant may renew its request for attorney fees.
 

 The judgment is reversed and the matter remanded to the trial court with directions to enter judgment in favor of defendant. Defendant to recover costs on appeal.
 

 Blease, J., and Morrison, J., concurred.
 

 [1]
 

 At the time of its enactment in 1978, Health and Safety Code section 1566.5 applied to all types of residential care facilities, as defined in Health and Safety Code section 1502, subd. (a)(1), including residential care facilities for the elderly. Subsequently, the Legislature determined residential care facilities for the elderly should be licensed as a separate category within the existing licensing structure of the Department of Social Services. (Health and Saf. Code, § 1569.1, subd. (h).) Accordingly, residential care facilities for the elderly are now governed by the provisions set forth in the California Residential Care Facilities for the Elderly Act. (Health and Saf. Code, § 1569 et seq.)
 

 [2]
 

 Referring to the federal legislation, the
 
 Broadmoor
 
 court commented: “The Federal Fair Housing Act of 1968, was amended in 1988, to make it unlawful ‘[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . ['JD a person, residing in or intending to reside in that dwelling after it is so sold, rented, or made available. . . .’ (42 U.S.C. § 3604(f)(1).) Restrictions on housing accommodations for the disabled violate the Federal Fair Housing Act as amended in 1988. [Citation.]
 
 U.S.
 
 v.
 
 Scott
 
 (D.Kan. 1992) 788 F.Supp. 1555 asked the question: ‘Specifically, does the enforcement of restrictive covenants for the purpose of discriminating against handicapped individuals constitute a violation of the Act?’
 
 ([Scott, supra,]
 
 at p. 1561.) In answering this question in the affirmative, the court reviewed the legislative history of the Federal Fair Housing Act and noted ‘[i]n discussing the scope of the amended Act, the House Committee on the Judiciary stated that the Act ‘is intended to prohibit special restrictive covenants or other terms or conditions, or denials of service because of an individual’s handicap and which . . . exclud[e], for example, congregate living arrangements for persons with handicaps.’
 
 [U.S.
 
 v.
 
 Scott, supra,
 
 788 F.Supp. at p. 1561.] The court also relied on
 
 Casa Marie, Inc.
 
 v.
 
 Superior Court of Puerto Rico
 
 [(D. Puerto Rico 1990)] 752 F.Supp. 1152 where ‘the court held that the Fair Housing Act was violated by the defendants’ enforcement of a neutral restrictive covenant in state court to terminate the operation of a home for the handicapped.’ [Citation.]”
 
 (Broadmoor, supra, 25
 
 Cal.App.4th at p. 8.)
 

 [3]
 

 Broadmoor
 
 noted the 1993 amendments bring squarely into question the constitutional issue raised in
 
 Seaton
 
 and
 
 Barrett.
 
 (25 Cal.App.4th at pp. 9-10.) However, the
 
 Broadmoor
 
 court did not address the constitutional issue because the parties declined the court’s invitation to brief it.
 
 (Broadmoor, supra,
 
 25 Cal.App.4th at pp. 9-10.)